**In re Roy K. KOHR, Norma J. Kohr, Debtors.**

**Roy K. KOHR, Norma J. Kohr, Plaintiffs,**

v.

**MAGISTERIAL DISTRICT 52–1–01, LEBANON, LEBANON COUNTY, PA, and John F. Arnold, in his official capacity as District Justice 52–1–01, Lebanon, Lebanon County, Pa., Defendants.**

Bankruptcy No. 1–86–01125.

Adv. No. 1–87–0039.

United States Bankruptcy Court, M.D. Pennsylvania.

Feb. 22, 1988.

Joyce A. Nettke, Lebanon, Pa., for plaintiffs.

Nancy E. Gilberg, Charles W. Johns, Philadelphia, Pa., for defendants.

## MEMORANDUM

ROBERT J. WOODSIDE, Bankruptcy Judge.

This adversary proceeding was initiated by Roy K. Kohr and Norma J. Kohr (debtors) against John F. Arnold in his official capacity as District Justice and his magisterial district (defendants). The amended complaint seeks to hold defendants in contempt for violating the stay imposed by section 362 of the Bankruptcy Code (11 U.S.C. § 362). The defendants have filed a motion to dismiss and a memorandum of law in support of their motion. The debtors have filed a memorandum of law in opposition to the motion and the matter is now ready for decision.[1]

The defendants' memorandum accurately sets forth the substantive averments of debtors' amended complaint:

Plaintiffs claim that on October 8, 1986, defendants issued summonses to plaintiffs for payment of a $100.00 fine plus costs for failing to file county earned income tax returns. (Paragraph 6 Amended Complaint); a true and correct copy of the Summons and Complaint addressed to Roy Kohr is attached as Exhibit "A" to plaintiffs' Amended Complaint). Plaintiffs were guilty of failure to file, but did not have the money to pay the fines and costs, so did not respond to the summonses. (Paragraph 7, Amended Complaint). It is asserted that debtors filed their Chapter 13 petition on October 31, 1986, i.e. after the summonses were issued. (Paragraph 8, Amended Complaint). Plaintiffs claim that defendants had notice of debtors' filing (Paragraph 9 Amended Complaint), but that without notice to plaintiffs or their counsel, defendants, on March 13, 1987 caused war-

---

1. Defendants filed a motion to deem their motion to dismiss unopposed because debtors' brief was not filed until October 2, 1987. Under Local Rule 401.6 a party opposing a motion is required to file a brief fifteen (15) days after being served with plaintiffs' brief. Defendants' brief was mailed to debtors on September 11, 1987 and thus debtors' brief should have been filed on September 29, 1987 (see Federal Rules of Civil Procedure (6)). While it is important for counsel to abide by the rules of court, I'm not disposed to dismiss a complaint because counsel is three days late in submitting a brief in opposition to a motion to dismiss.

rants to issue for plaintiffs' arrest. (Paragraph 10, Amended Complaint). Plaintiffs claim that without notice, on Friday, March 23, 1987 a constable came to plaintiffs' home with a warrant to arrest plaintiff, Roy Kohr (Paragraph 11, Amended Complaint), and that fearing jail, plaintiff, Roy Kohr paid the fine and costs. (Paragraph 14, Amended Complaint). The amended complaint, however, does not aver whether the warrant was in fact ever served upon Norma Kohr. Plaintiffs claim that they have now filed their 1985 tax return. (Paragraph 25, Amended Complaint).

Plaintiffs claim that defendants violated their rights under 11 U.S.C. § 362 and that defendants' acts also constituted denial of plaintiffs' federal statutory rights under color of law, and, therefore, violated 42 U.S.C. § 1983. Plaintiffs request an order declaring that defendants violated the automatic stay; requiring defendants to return to plaintiffs the $100.00 collected by defendant from plaintiff Roy Kohr; holding defendants in contempt; ordering the governmental unit to pay actual damages to plaintiff, Norma Kohr of $19.25 for lost income; order the governmental unit defendant to pay punitive damages to plaintiffs; awarding plaintiffs the costs of this action and reasonable attorney's fees and enjoining defendants from further acts to collect the fines described.

Defendants' Memorandum of Law, pp. 2 and 3.

The defendants' statement of questions presented raises five issues:

*Statement of Questions Presented*

1. Whether Magisterial District 52–01 is not a "person" against whom suit may be brought under 42 U.S.C. § 1983.

2. Whether District Arnold is absolutely immune from liability from damages based on the doctrine of judicial immunity.

3. Whether this court should abstain from entertaining the instant action.

4. Whether plaintiff fails to state a cause of action upon which relief may be granted as there was not a violation of the Automatic Stay, pursuant to 11 U.S. C. § 362(b)(1).

5. Whether plaintiff fails to state a cause of action upon which relief may be granted for contempt.

Memorandum p. 3.

I will dismiss debtors' amended complaint on the basis that District Justice Arnold's conduct as outlined in plaintiffs' complaint does not constitute a violation of the automatic stay provided by 11 U.S.C. § 362.

Section 362(a) is one of the most important protections provided a debtor by the Bankruptcy Code. It requires cessation by creditors of all legal proceedings and collection efforts against a debtor. Congress however carved out some exceptions to this broad protection. The relevant provisions for determination here are § 362(b)(1), (4) and (5) which provide:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

. . . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

The debtors argue that although it is not a violation of the automatic stay to continue the criminal proceedings to fix the amount of the fine, it is a violation to use those proceedings to collect the fine.

The debtors point to the case of *In re Blair*, 62 B.R. 650 (Bkrtcy.N.D.Ala.1986) as supporting their position. The Court there held that a fine was a money judgment the enforcement of which was stayed under the provision of 362(a) and was not exempted under § 362(b)(5) which specifically provides that the enforcement of money judgments by governmental units is *not* exempted from the automatic stay. In the *Blair* case the state of Alabama had issued an execution to sell the debtors' real estate to satisfy a fine imposed on the debtors. The Court seemed to base part of its reasoning on the Code's treatment of fines in a Chapter 7 distribution as found in Section 726:

> It is clear from the order of distribution established by Congress that claims for fines are to be treated as inferior and subordinate to the claims of other unsecured creditors in Chapter 7 cases, which is counter to any thought that collection of a criminal fine is given any favored or protected status in a bankruptcy case.

*In re Blair*, supra at p. 652.

I cannot concur in this reasoning.[2] The governmental unit which has imposed a fine on a debtor is in a far superior position than any unsecured creditor. Its debt is not dischargeable under 11 U.S.C. § 523(7) and the nonpayment of the fine can result in imprisonment. I don't believe Congress was unaware of the governmental unit's ability to collect a fine. Rather I think Congress viewed the fine as a form of punishment which should be paid by the debtor from exempt property or future earnings.

The debtors here argue that the violation is the seizure of money which under Chapter 13 is property of the estate. Technically they are correct. Section 1306 expands the definition of property of the estate in a Chapter 13 case. It provides:

**§ 1306. Property of the estate.**

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11 or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

It must be remembered, however, that property of the estate is an entirely different concept under Chapter 13. As pointed out above the debtor remains in possession of all property of the estate in a Chapter 13, while in a Chapter 7 the property vests in a trustee who has the responsibility of liquidating it and distributing it among creditors.

The concept of Chapter 13 is not the liquidation of estate property but rather the debtors' commitment of disposable income from future earnings to a plan, usually three years, for payment to creditors. "Disposable income" is defined in section 1325(b)(2) as follows:

2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; [or] and

---

**2.** I don't disagree with the holding of *In re Blair*. Because of the distribution scheme set out in § 726 a fine should not be collectable out of property of the estate as defined in section 541 of the Code. This is true no matter what chapter the debtor has filed under title 11. Experience has proven that many Chapter 13 proceedings end as Chapter 7. If the Court in *In re* 

*Blair* had allowed the governmental unit to collect the fine out of the debtors' real estate and the case had converted to one under Chapter 7 the governmental unit would have received a dividend ahead of unsecured creditors in violation of section 726. I recognize, of course, that to the extent the debtor has taken his exemption in the real estate this would not be the case.

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Thus, in a Chapter 13 the debtor uses "estate property" to provide for his or her maintenance or support. In this case, the $100 fine already paid by Mr. Kohr and the $100 fine still owing by Mrs. Kohr would be considered to be part of the debtors' maintenance expenses.

I think the debtors, by arguing that a fine is a money judgment protected by the stay because of § 362(b)(5), misconstrued the import of § 362(b)(1) which excluded criminal proceedings from the operation of the automatic stay. The sentencing of a defendant in a criminal case is an integral part of the criminal proceeding, whether it be imprisonment, a fine or restitution.

The United States Supreme Court in the recent case of *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), held that an order of restitution was not dischargeable in a Chapter 7 case because it fell within the exception to discharge found in 11 U.S.C. § 523(a)(7) which provides:

§ 523 Exceptions to Discharge:

(a) A discharge under section 727, 1141, 1228(a) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(7) to the extent such debt is for fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty;

Unfortunately the Supreme Court did not address the question of whether Congress intended criminal penalties to be "debts" within the purview of the Bankruptcy Code.

In light of the established state of the law—that bankruptcy courts could not discharge criminal judgments—we have serious doubts whether Congress intended to make criminal penalties "debts" within the meaning of § 101(4). But we need not address that question in this case, because we hold that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence.

107 S.Ct. at 361.

The Supreme Court however did comment on the importance of not interfering with state criminal proceedings:

This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief. *See Younger v. Harris*, supra, [401 U.S. 37] at 44–45 [91 S.Ct. 746 at 750–51, 27 L.Ed.2d 699 (1971)]. This reflection of our federalism also must influence our interpretation of the Bankruptcy Code in this case.

. . . . .

In this case, we must consider the language of §§ 101 and 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.

. . . . .

Courts traditionally have been reluctant to interpret federal bankruptcy statutes to remit state criminal judgments. *Id.* at 358, 361.

Despite the Supreme Court's decision in the *Kelly* case several courts have ruled that a debtor may include in a Chapter 13 plan a restitution order arising out of a criminal proceeding.

In *In re Cullens*, 77 B.R. 825 (Bankr.D. Col.1987), the court held that a state court's order of restitution in a criminal proceeding is dischargeable in a Chapter 13. In this case the Chapter 13 plan had been confirmed with $100.00 paid in full satisfaction of all unsecured obligations. The debtor was under a state court order of restitution in the amount of $1,278 payable in monthly installments of $125.00. At the time of the filing he still was liable for $1,083 on the restitution sentence. The

court concluded that restitution is a debt and that since § 523(a)(7) does not apply in a Chapter 13 the debt would be discharged if the debtor successfully completed the plan. Thus the court issued an injunction to stop the revocation of probation proceedings in the state court.[3]

Another case holding that restitution is dischargeable in a Chapter 13 is *In re Johnson–Allen,* 69 B.R. 461 (Bkrtcy.E.D. Pa.1987). The *Johnson–Allen* Court relied in part on the following reasoning:

> Another source of Code support for an absence of Congressional intention to exclude all criminal penalties from bankruptcy discharge is, ironically, § 523(a)(7) itself, which excepts from its scope not only sums which are "not compensable for actual pecuniary loss," but also any sum otherwise within the scope of § 523(a)(7) "imposed with respect to a transaction or event that occurred **before three years before the date of the filing of the petition**" (emphasis added).[4] It is difficult to understand what purpose Congress would have served by exempting criminal penalties less than three (3) years old from discharge if it meant to exempt all such penalties from discharge.

---

4. It should be noted that, in contrast to the facts presented in *Kelly v. Robinson,* where the debtor filed her bankruptcy petition within three (3) months of her conviction, the criminal penalties assessed against the Debtors here were dated and could apparently have been discharged, even in a Chapter 7 case, under the terms of 11 U.S.C. § 523(A)(7)(B).

11 U.S.C. § 523(a)(7) provides:

(a) A discharge under sections 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

> (7) to the extent such debt is for fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty;

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

While recognizing that this is an extremely poorly drafted section, I think the *Johnson–Allen* court misconstrued what Congress intended it to mean. I think paragraph A & B of section 523(a)(7) applies only in regard to a tax penalty. Collier supports this conclusion:

> Paragraph (A) and (B) of section 523(a)(7) set forth the two exceptions to the dischargeability of tax penalties. Under paragraph (A), a tax penalty that relates to a tax of a kind not specified in section 523(a)(1) is dischargeable. If the tax penalty does not relate to a nondischargeable debt specified in section 523(a)(1), it is dischargeable. Under paragraph (B) if the tax penalty was imposed with respect to a transaction or event that occurred more than three years before the date of the filing of the petition, such penalty is discharged.

Collier on Bankruptcy, § 523.17, p. 523–126.

I, therefore, believe that the *Johnson–Allen* court was incorrect in assuming that Congress intended criminal penalties more than three (3) years old to be discharged. The three year distinction applies only to certain tax claims. Accordingly, the *Johnson–Allen* court's conclusion in Footnote 4, *supra,* that the criminal penalties in the *Johnson–Allen* case would have been dischargeable is erroneous.

A bankruptcy appellate panel of the Ninth Circuit in *In re Heincy,* 78 B.R. 246, 16 BCD 676 (1987) also concluded that restitution is dischargeable in a Chapter 13 case. However, I find the dissent's interpretation of the effect of *Kelly v. Robinson* on this issue to be persuasive:

> The majority, here, focuses on the nature of the restitution obligation as a

---

**3.** The Court quoted extensively from the *Kelly* case but distinguished it on the basis that *Kelly* involved a Chapter 7 rather than a Chapter 13.

claim or debt, as did the court below which in turn relied on the reasoning of the circuit court opinion in *Kelly v. Robinson*. The Supreme Court, in reversing the circuit, adverted at length to the circuit's claim/debt analysis which provided a rationale for application of the discharge. The Court, in effect, held that the principle of federalism was overriding:

> In this case, we must consider the language of Secs. 101 [definitions of claims and debts] and 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.

107 S.Ct. at 358.

After reviewing the treatment of criminal judgments under the Bankruptcy Act of 1898, the Court concluded that Congress enacted the Bankruptcy Code "against the background of an established judicial exception to discharge for criminal sentences, including restitution orders." 107 S.Ct. at 359. The Court then said:

> Our interpretation of the Code also must reflect the basis for this judicial exception, **a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings.** The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions." *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).

107 S.Ct. at 360. (Emphasis added.) Later the Court also said:

> ... This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief. *See Younger v. Harris*, 401 U.S., at 44–45, 91 S.Ct. at 750–751. **This reflection of our federalism also**

**must influence our interpretation of the Bankruptcy Code in this case.**

107 S.Ct. at 361 (Emphasis added).

The majority fails to address the federalism rationale which was held to be paramount by the U.S. Supreme Court in *Kelly*. The principle of federalism as it concerns insulation of "the results of state criminal proceedings" from a bankruptcy discharge should be no less applicable in Chapter 13 than it is in Chapter 7.

78 B.R. at 251, 16 B.C.D. at 679.

A number of courts have refused to allow debtors to discharge their restitutionary obligations.

*In re Oslager*, 46 B.R. 58 (Bkrtcy.M.D. Pa.1985) held that an order of restitution did not create a debtor-creditor relationship under the Code:

> Chief Judge Thomas C. Gibbons stated:
>
> In view of our determination that the order of restitution under the facts of this case is one in the nature of rehabilitation rather than an order for repayment to the victim, we find there is no debt as contemplated by the Bankruptcy Code and, therefore, there is no pre-existing debtor-creditor relationship between the Commonwealth and Oslager. We also find that the probationary obligation is not within scope of debts dischargeable or subject to the stay or discharge provisions of the Bankruptcy Code. Since the probationary restitution is not a debt it is, therefore, not subject to the time restrictions of the discharge provisions of the Bankruptcy Code and Bankruptcy Rules and this court finds that the summary judgment was timely filed. We also find that this criminal proceeding was a matter entirely within the jurisdiction of the courts of the Commonwealth of Pennsylvania and we believe that this court does not have jurisdiction to interfere with the sentence of the state court.

Judge Gibbons relied heavily on *In re Pellegrino*, 42 B.R. 129 (Bkrtcy.D.Conn. 1984):

As earlier observed, federal courts should use restraint when their decisions might interfere with traditional state functions. There is not more appropriate application of that policy than in the area of criminal law where states have a primary responsibility to promote the safety and welfare of the citizens through the enforcement of their criminal statutes. This policy, which extends to noninterference with state criminal proceedings, is endorsed by the Bankruptcy Reform Act of 1978 and its legislative history and, in this proceeding supports the conclusion that the restitution order, as part of a criminal action against Pellegrino, is excepted from discharge under Code § 523(a)(7). It would be incongruous that the drafters of the Bankruptcy Code, mindful of the wisdom of noninterference with criminal prosecutions, would limit, under Code § 362(b)(1), the scope of the automatic stay to allow the continuation of criminal proceedings against a debtor and then provide for the discharge of restitution, one of the sanctions made available to the criminal court by the state legislature.

*In re Pellegrino* at 138.

I agree with Judge Gibbons reasoning in *Oslager*. In addition, the language of the *Kelly* case convinces me that if this issue were before the Supreme Court it would hold that fines, penalties, forfeitures or restitution ordered by a state court in a criminal proceeding are not debts dischargeable in a Chapter 13 bankruptcy proceeding. The majority of Chapter 13 cases are filed to save the home. Most provide very small payments to unsecured creditors. I have approved plans with no payments going to unsecured creditors. The strong principals enunciated in the *Kelly* case are totally inconsistent with the discharge of criminal penalties in a chapter 13 case.

An appropriate order will be entered.

### ORDER

AND NOW, this 22nd day of February, 1988, in accordance with the accompanying memorandum of this Court,

IT IS ORDERED that the above referenced adversary proceeding shall be and is hereby dismissed, and it is further

ORDERED that the Clerk's Office shall close its file in this proceeding.