**In re Migdalia COLON a/k/a Migdalia Santiago, Debtor.**

**Migdalia COLON, Plaintiff,**

**v.**

**Royal HART, Chief Clerk, City of Philadelphia, Traffic Court, Howard Yerusalim, Secretary, Commonwealth of Penna., Dept. of Transportation and Edward Sparkman, Standing Trustee, Defendants.**

**In re Fred J. SZOSTEK, Denise M. Szostek, Debtors.**

**Fred SZOSTEK, Plaintiff,**

**v.**

**Royal HART, Chief Clerk, City of Philadelphia, Traffic Court, Howard Yerusalim, Secretary, Commonwealth of Pennsylvania, Department of Transportation, Edward Sparkman, Standing Trustee, Defendants.**

**Bankruptcy Nos. 87–03126F, 87–03425F. Adversary Nos. 88–0294F, 88–0330F.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 11, 1989.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Before me are two adversary proceedings that have been consolidated for trial by agreement of the parties. The complaints seek injunctive and declaratory relief, damages, and attorneys' fees arising out of the defendants' alleged violations of the Bankruptcy Code, 11 U.S.C. §§ 362, 525. That is, the debtors maintain that the defendants [1] sought, postpetition, to collect traffic fines and to suspend their drivers' licenses. The debtors also seek relief for an alleged infringement of their civil rights, pursuant to 42 U.S.C. § 1983.

Trial was held on the matter and the parties have submitted posttrial submissions. Upon review of the evidence and legal arguments presented, I conclude that defendants did violate the automatic stay provisions of § 362(a).

## I.

### A.

Plaintiff Migdalia Colon filed her chapter 13 petition in bankruptcy on June 25, 1987. Prior to that filing, on April 13, 1987, three motor vehicle violation citations were issued to Migdalia Colon, citing violations of 75 Pa.C.S.A. §§ 3743(a) (leaving the scene of an accident), 3310(a) (following another vehicle more closely than is reasonable and prudent), and 1312 (failing to notify PennDOT of changed registration data). See Plaintiff's Exhibit Request for Admissions, p. 4.[2]

David A. Searles, Community Legal Services, Philadelphia, Pa., for debtors/plaintiffs, Migdalia Colon and Fred Szostek.

Howard M. Holmes, Charles W. Johns, Philadelphia, Pa., for defendant, Royal Hart, Chief Clerk City of Philadelphia Traffic Court.

Christopher Clements, Harrisburg, Pa., for defendant, Howard Yerusalim, Secretary Com. of Pa., Dept. of Transp.

Edward Sparkman, Philadelphia, Pa., defendant and Chapter 13 Standing Trustee.

1. Defendants Pennsylvania Department of Transportation and Howard Yerusalem, Secretary of that department, will be jointly referred to as "PennDOT."

2. Reference to the evidentiary record built by plaintiffs' counsel is made awkward by counsel's disinclination to mark exhibits at trial and by the posttrial submission of marked exhibits. Counsel moved into evidence at trial the following documents: plaintiffs' complaint; answer of defendant Traffic Court; answer of defendant PennDOT; plaintiffs' interrogatories to defendant Traffic Court and answers; plaintiffs' interrogatories to defendant PennDOT and answers; and plaintiffs' requests for admissions. Also brought into evidence were three marked exhib-

its: a memo from assistant counsel at PennDOT to Robert Bazdan, Manager, Citation Processing Division, dated August 20, 1981 (Ex. P–18); PennDOT form number D2–603 (Ex. P–19); and PennDOT's "file on the plaintiff Fred Szostek" (Ex. P–20).

Counsel for all parties jointly requested at trial that the record be left open for the submission of the depositions of Mrs. Goldberg, a clerk of the Traffic Court, and defendant Hart; seven days were granted for the submission of these depositions plus any attached documents. See N.T. at 46–48. The depositions were filed with the Bankruptcy Court in a timely fashion. Attached to these depositions are 25 documents, labeled P–1 through P–25. Plaintiffs' exhibits

Plaintiff Colon appeared in Philadelphia Traffic Court postpetition, on July 7, 1987, to challenge the three citations and attendant fines summarily issued in April, 1987. She apparently testified in that court to her belief that somebody else was driving with her license, or perhaps using her name, and that this other person had received the tickets then being attributed to her. The defense was rejected by Judge Morotto, who adjudicated her guilty of the traffic violations and imposed a fine of $435.50.[3] [N.T. at 37–38; posttrial Ex. P–4.]

Subsequent to this adjudication, on July 27, 1987 Ms. Colon filed her chapter 13 statement and included therein this $435.50 fine. Also on that date, counsel for plaintiff notified Traffic Court of the plaintiff's June 25, 1987 bankruptcy filing, and advised the court that the automatic stay prohibited collection of the fine. *See* posttrial Ex. P–5. On or about August 19, 1987 Traffic Court received from the bankruptcy court a notice of the meeting of creditors and of the automatic stay. Posttrial Ex. P–6. Thereafter, on September 1, 1987, Traffic Court sent a letter to plaintiff Colon acknowledging receipt of the notice from Bankruptcy Court and requesting that she furnish Traffic Court with her motor vehicle license tag and operator numbers. Colon responded by telephoning that court and providing the requested information. Posttrial Ex. P–7; N.T. at 18.

On October 22, 1987, Traffic Court sent Colon a notice, which stated in pertinent part as follows:

### WARNING

OUR RECORDS INDICATE THAT YOU ARE DELINQUENT IN THE PAYMENT OF COST AND FINES IN THE AMOUNT OF $455.00 FOR PENNSYLVANIA MOTOR VEHICLE VIOLATIONS IN PHILADELPHIA. IF PAYMENT DOES NOT REACH THIS OFFICE WITHIN FIVE (5) DAYS OF THE RECEIPT OF THIS NOTICE, A WARRANT WILL BE ISSUED FOR YOUR ARREST AND YOU WILL BE LISTED IN THE POLICE DEPARTMENT ENFORCEMENT COMPUTER AND A COPY WILL BE SENT TO HARRISBURG FOR THE SUSPENSION OF YOUR OPERATORS LICENSE.

Posttrial Ex. P–8.[4] In response to this warning notice, Colon's attorney wrote to PennDOT, advising it of the bankruptcy filing and the automatic stay. The letter stated in pertinent part that

11 U.S.C. § 362 of the Bankruptcy Code prohibits the activities taken by the City [of Philadelphia] and the efforts of PennDOT to suspend the licenses. These activities are therefore void, and may be considered in contempt of the Bankruptcy Court. Accordingly, I request that PennDOT rescind any suspension notice issued in my clients' cases and confirm to me in writing when this has been done.

Ex. E attached to Complaint.[5] Counsel for PennDOT responded by letter of November 19, 1987, stating that, with respect to Migdalia Colon, "[a] review of your client's driving record, as of the date of this letter, reveals no present suspension or revocation of the operating privilege." Ex. H attached to Complaint.

Subsequently, on December 3, 1987, the Traffic Court sent Colon yet another notice, this one entitled "Final Warning," which stated in part:

Since you have not responded to the previous notice sent to you regarding your

---

18, 19 and 20 admitted at trial do not correspond to exhibits 18–20 submitted posttrial.

3. While the debtor offered evidence suggesting that PennDOT may have confused her for another individual with the same name, principles of issue and claim preclusion render the decision of Traffic Court on this point nonreviewable in this court. *See In re Highway Truck Drivers and Helpers, Teamsters Local No. 107*, 100 B.R. 209 (Bankr.E.D.Pa.1989).

4. This notice makes reference to a 30 day payment plan on citation number 0314895. However, the Traffic Court document evidencing her adjudication on July 6, 1987 shows that she was given a 90 day payment plan. *See* Ex. P–1 attached to Request for Admissions or Posttrial Ex. P–4; N.T. at 39.

5. This letter was written by counsel on behalf of both plaintiffs, Szostek and Colon.

default payment of $455.00, we have issued a warrant for your arrest.

Should you not respond to this letter within five (5) days of receipt, the copies that were forwarded to the Philadelphia Police Department and the Pennsylvania State Police will be enforced immediately. You can and will be subject to arrest on sight!

Posttrial Ex. P–9.[6]

Evidence purportedly involving plaintiff Colon and an earlier issued traffic violation was submitted at trial by PennDOT. Exhibit Dept. 1 includes evidence of a violation of 75 Pa.C.S.A. § 1311(b) (failure to possess and exhibit upon demand the vehicle's registration card), issued June 4, 1986 to one Migdalia Colon. Plaintiff Colon credibly testified that she did not receive this citation, and that the personal data on the citation's surrounding documents are not hers. However, it also appears from the evidence that defendants have taken no action against this plaintiff on the basis of this particular citation. Instead, the actions of which plaintiff complains all flow from the issuance of the three tickets in April, 1987.

### B.

Plaintiff Szostek was cited on May 16, 1987 for violating section 3323(b) of the Pennsylvania Vehicle Code for failing to stop at a stop sign. This violation resulted in a fine of $52.50. Posttrial Ex. P–15. Mr. Szostek and his wife filed a chapter 13 bankruptcy petition on July 7, 1987, and included the fine for that violation as a debt in the chapter 13 statement [N.T. at 8].

By letter of July 13, 1987, Szostek's counsel advised Traffic Court of his bankruptcy filing and advised that, due to the effect of the automatic stay, "Traffic Court is obliged to cease all collection efforts with regard to this account." Posttrial Ex. P–16. Traffic Court wrote to these debtors on July 23, 1987, acknowledging "a bankruptcy notice from the United States Bankruptcy Court," and asking debtors to furnish their license plate and operator numbers; reply was made by mail. Posttrial Ex. P–17; Dep. of Goldberg, 40–42.

At some point thereafter Traffic Court apparently notified PennDOT that Szostek had failed to respond to his May, 1987 citation, thus setting in motion the procedures by which PennDOT could suspend his driver's license.[7] PennDOT sent Szostek a notice on November 6, 1987 of a scheduled suspension of his driver's license, which suspension was to occur on November 27, 1987. This notice lists an amount owed of $63.00,[8] and states that he may do the following to prevent suspension:

(1) appear for a hearing at Philadelphia Traffic Court, 9:30 A.M., Monday through Friday, plead not guilty and contest violation; or

(2) plead guilty to the violation by sending a money order or certified check

**6.** No warrant was actually issued for the arrest of Ms. Colon, and no copies of this letter were in fact provided to the Philadelphia Police Department or the Pennsylvania State Police. Instead, Colon's Traffic Court case was then in the "warrant stage," whereby the only way she could have been arrested on her Traffic Court violation would be upon her detention by the police for independent reasons, including another traffic violation. The detaining officers would have to call in to their police district, which in turn would then call the Scofflaw Unit of Traffic Court to determine if the detained person was in the "warrant stage." Only then would grounds exist for Ms. Colon's arrest. Dep. of Hart, 13–15.

**7.** Plaintiff's Proposed Finding of Fact no. 34 states that this notification occurred on Septem-

ber 8, 1987, and bases this conclusion on "¶ 22, Answer of PennDOT" and "¶ 2, Request for Admissions from PTC." Paragraph 22 of the Answer actually denies this allegation, while the record reveals no answer to this request, thereby creating an admission pursuant to Bankr.R. 7036. Trial Exhibit P–20, p. 5 is a "Request for Suspension of Operating Privileges," dated September 6, 1987, and is addressed to Mr. Szostek. The request states that unless he pays the fine and costs listed within 15 days, his name "will be referred to the proper authorities who will suspend your driving privileges until fine and costs are paid."

**8.** This sum includes the $52.50 fine, an eight day penalty/court cost of $6.50, and a warrant cost of $4.00. Posttrial Ex. P–20.

in the amount [of $63.00] to [Traffic Court].

Exhibit Request for Admissions, attachment P-13.

Szostek's counsel wrote to PennDOT on November 13, 1987, notifying it of the bankruptcy and automatic stay, and requesting PennDOT to rescind the suspension notice. Exhibit Complaint and Ex. E attached thereto. PennDOT responded by its letter of November 19, 1987, stating that Szostek had received this official notice of a suspension pursuant to 75 Pa.C.S.A. § 1533, for failing to respond to the criminal charge of violating section 3323(b) of the Vehicle Code, and further stating that this suspension "shall be indefinite until [PennDOT] receives adequate proof of response as provided by the Pennsylvania Rules of Criminal Procedure. Until such time as your client responds to this violation, the matter constitutes a pending criminal charge pursuant to the Vehicle Code." Ex. Complaint, Ex. I attached thereto.

Szostek went to Traffic Court on Monday, November 23, 1987,[9] where he informed court personnel of his chapter 13 bankruptcy. According to his testimony he was directed to see Mrs. Goldberg,[10] but she was not present; another clerk offered to help him. He showed this unidentified clerk his bankruptcy papers, but "she said, well, it doesn't matter if you declare bankruptcy, you still have to pay your fine." Plaintiff asked, " 'if I do not pay my fine, they are going to suspend my license?' And she said, That's right." [N.T. at 12.] Therefore, in order to not lose his driving privilege for any amount of time he paid the fine, plus costs. Posttrial Ex. P-19. Szostek's counsel enclosed a copy of the receipt for this payment to PennDOT in a letter dated November 24, 1987, stating that Szostek paid the fine "under protest and without waiving any right to attempt to obtain the return of his money, plus damages." Trial Ex. P-20, p. 3a.

## II.

The debtors raise three distinct statutory provisions in support of their contention that the defendants cannot continue with postpetition collection efforts involving prepetition traffic tickets: 11 U.S.C. §§ 362(a), 525, and 42 U.S.C. § 1983. While the defendants assert a variety of grounds to support their conduct, these grounds are related. In essence, defendants argue that traffic violations are summary criminal offenses, the enforcement of which is permitted by the Bankruptcy Code under 11 U.S.C. § 362(b)(1), (4). Since section 362 is central to both parties, I shall discuss its provisions first.

Defendants are correct that, in Pennsylvania, traffic violations are criminal offenses. For example, Mr. Szostek was cited for violating section 3323(b) of the Pennsylvania Vehicle Code, 75 Pa.C.S.A. §§ 101 *et seq.*, for failing to stop at a stop sign on May 16, 1987. The issuance of a traffic ticket is treated as a subpoena to appear in court so that the matter can be adjudicated. The ticket itself, which represents a pending criminal charge, does not set a court date; the court date is set by the alleged offender's appearance in Traffic Court. A payment of the disclosed fine on the ticket constitutes a plea of guilty and does not require a court appearance. 75 Pa.C.S.A. § 6501(b). The driver can, of course, appear in court and plead either guilty or not guilty.

Until the driver responds to the citation, either by paying the fine or appearing in court, there is no determination of guilt or innocence. In order to compel some response, the Vehicle Code contains a provision, 75 Pa.C.S.A. § 1533, which permits PennDOT to suspend a driver's license, upon 15 days prior notice, for the driver's failure to respond. PennDOT may also suspend the license for a driver's failure to pay any assessed fines, if the Traffic Court adjudicates the driver guilty. 75 Pa.C.S.A. § 1533. In addition, any person who does

---

**9.** Mr. Szostek testified that he missed three hours of work in order to go to Traffic Court, and that he is paid the hourly rate of $10.00. [N.T. at 11.]

**10.** Mrs. Maxine Goldberg is a clerk of the Traffic Court, and she handles bankruptcy cases. Dep. of Goldberg, at 3.

not comply with an order imposing any fines or costs may be imprisoned for a number of days equal to one day for each $10.00 of the unpaid balance of the fines and costs. 75 Pa.C.S.A. § 6504(b).

Since traffic violations are usually summary offenses, *see* 75 Pa.C.S.A. § 6502(a) (violation of the vehicle code, unless otherwise declared by statute to be a misdemeanor or felony, is a summary offense), only fines may be imposed upon drivers found guilty of infractions, while minimal terms of imprisonment may be imposed only for failure to pay the fines. *See* 18 Pa.C.S.A. § 106(c). Nonetheless, even if the driver duly pays the assessed fines, his or her license may be suspended because of the nature of the traffic infraction. *See, e.g.,* section 1547 (driver arrested for driving under the influence of alcohol must submit to a chemical analysis for the purpose of determining alcoholic content of blood; the failure to submit results in an automatic suspension of the driving privilege for a stated period). The license may also be suspended regardless of payment of fines if the driver has a significant history of traffic infractions. *See* 75 Pa.C.S.A. §§ 1538 (accumulation of traffic violation "points," *see* 75 Pa.C.S.A. § 1535, may result in compulsory driver improvement training or special examination, the failure of which to complete successfully resulting in license suspension), 1539 (accumulation of sufficient points results in automatic suspension).

 The issue before me is whether the traffic violation enforcement mechanisms brought into play in these consolidated cases violate the provisions of subsection 362(a) of the Bankruptcy Code, or are fully insulated by subsection 362(b). Clearly, the traffic fines themselves, if they arose prepetition, would be prepetition claims dischargeable in chapter 13. *See In re Johnson–Allen,* 871 F.2d 421 (3d Cir. 1989); *Smith v. Pennsylvania Dept. of Transp.,* 66 B.R. 244 (E.D.Pa.1986); *In re*

*Young,* 10 B.R. 17 (Bankr.S.D.Cal.1980). *See also In re Gallagher,* 71 B.R. 138 (Bankr.N.D.Ill.1987); *In re Caggiano,* 34 B.R. 449 (Bankr.D.Mass.1983). Similarly, as contingent claims are also debts within the meaning of the Bankruptcy Code, 11 U.S.C. § 101(4), *Matter of M. Frenville Co.,* 744 F.2d 332 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), the debtors' obligations arising from the issuance of prepetition traffic tickets are dischargeable obligations in chapter 13. *See, e g., Smith v. Pennsylvania Dept. of Transportation; In re Young.*[11]

Unless the provisions of subsection 362(b) are applicable, attempts to collect prepetition debts violate the automatic stay. *E.g., In re Norton,* 717 F.2d 767 (3d Cir.1983); *Fidelity Mortg. Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Decisions interpreting subsections 362(a) and (b) have noted a significant distinction, as emphasized by subsection 362(b)(5), involving governmental creditors. Section 362(b), as a matter of important congressional policy, permits a governmental agency to enforce its health, safety and police powers by obtaining an injunction, declaratory relief and even fines and monetary damages. However, as noted in subsection 362(b)(5), the enforcement, as opposed to the entry, of the fine or other monetary damage is prohibited by the automatic stay. *See Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) (enforcement of monetary obligation to clean up hazardous waste site was enjoined by automatic stay); *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383 (3d Cir.1987) (enforcement of OSHA citation fine enjoined by automatic stay). *See also H & H Beverage Distributors v. Department of Revenue,* 850 F.2d 165 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988) (Commonwealth may assess tax obligation but not create a tax

---

**11.** Defendants rely upon *In re Kohr,* 82 B.R. 706 (Bankr.M.D.Pa.1988) and suggest that traffic fines are not debts. *Kohr* dealt with criminal restitution, not fines, and so is inapposite.

Moreover, the holding of *Kohr* was recently rejected by the Court of Appeals in *Johnson–Allen.*

lien). *Compare Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3d Cir.1984) (state court order to remove hazardous wastes was not equivalent to enforcement of monetary judgment).

As the Third Circuit Court of Appeals explained in *Brock:*

> Thus, although the stay does not operate against actions or proceedings by governmental units "attempting to fix damages for violation of such a (health and safety) law" ... it does prevent a governmental unit from enforcing [a $21,000.00 OSHA fine].

829 F.2d at 389 (citations omitted). *Accord, Illinois v. Electrical Utilities*, 41 B.R. 874, 877 (E.D.Ill.1984) ("Congress allows governmental units to get money judgments in pursuit of their police power, but forces them to wait in line like all other creditors to get the judgment enforced"); *EEOC v. Rath Packing Co.*, 37 B.R. 614 (S.D.Ia.1984).

■ In the context of the instant proceedings, the defendants are correct that the bankruptcy code does not preclude them from issuing traffic citations and determining the guilt or innocence of the driver. Toward that end they are free, even postpetition, to issue summonses, compel a resolution of guilt or innocence, and impose fines. Once guilt is established and a fine is imposed, however, they are not free to enforce collection of the fine by revoking or threatening to revoke driving privileges or by threatening arrest. If state law mandates the suspension or revocation of driving privileges due to the nature of the infraction or the driver's history of traffic violations, irrespective of whether the driver promptly pays a fine, the bankruptcy code will not interfere with the exercise of this police power. That is, the automatic stay does not preclude the state from removing unsafe drivers from the roads.

Conversely, the code does prevent the state from utilizing its power to suspend driving privileges in order to collect its fines. As with other creditors, it will receive distribution from estate property pursuant to the terms of a confirmed plan. "Enforcement of a monetary judgment [or other dischargeable debt such as a fine] would give the governmental unit an unfair advantage over other creditors, would effectively subvert the scheme of priorities set forth in section 507, and would deny to the debtor the benefits of discharge." 2 *Collier on Bankruptcy,* ¶ 362.05, at 362–47 (15th ed. 1988) (footnotes omitted). *Accord, In re Johnson–Allen.* If no plan is confirmed, or if the confirmed plan is not completed, the debtor's prepetition obligation to pay the fine will not be discharged and upon dismissal of the bankruptcy, the state is free to resume collection procedures. *See In re Young,* 10 B.R. at 19.

■ With these principles in mind, I conclude that the defendants did engage in activities designed to collect a prepetition claim in violation of the automatic stay. *See In re Christensen,* 95 B.R. 886, 901 (Bankr.D.N.J.1988). After Ms. Colon was found guilty of various traffic violations, and after fines were assessed and a repayment plan established, she notified the Traffic Court of the scheduling of this fine in bankruptcy. Traffic Court nonetheless embarked on a deliberate pattern to collect the assessed fines. Two letters were sent by that entity to Ms. Colon, which demanded payment, threatened suspension of her driving privileges, and even threatened her with arrest. Such conduct violated the stay imposed by section 362(a) and was done with clear knowledge of the chapter 13 bankruptcy filing, as well as the automatic stay. *See In re Sechuan City, Inc.,* 96 B.R. 37 (Bankr.E.D.Pa.1989); *In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987). I do not find, however, that PennDOT violated the automatic stay with respect to this debtor for PennDOT took no action to collect any prepetition debt.

■ Unlike Ms. Colon, Mr. Szostek never disputed his guilt. He listed his fine as an undisputed prepetition claim in his chapter 13 statement and duly informed the defendants of his intention to repay this obligation through his chapter 13 plan. Despite this, PennDOT sent letters to this debtor which were designed to collect the prepetition claim. Mr. Szostek appeared in

the administrative office of Traffic Court and iterated his intention to pay the fine in the context of his bankruptcy. Traffic Court personnel did not accept his "plea," and so Mr. Szostek paid his fine, postpetition, under protest.

To the extent defendants argue that Mr. Szostek's actions represented an inappropriate method of conceding guilt, such an argument was expressly rejected by the district court in *Smith v. Pennsylvania Dept. of Transportation.* In *Smith,* PennDOT contended that guilt could only be established by paying the fine or appearing in Traffic Court in Connecticut and pleading guilty. The district court replied:

> To suggest that Smith should appear in Connecticut traffic court to contest a citation for which he has acknowledged his guilt is patently wrong. Yet, given Smith's lack of resources, that would be his only choice under PennDOT's reasoning.

66 B.R. at 246.

In other words, I must reject defendants' argument that the threatened suspension of Mr. Szostek's license was due only to his failure to comply with section 1533 and permit the determination of guilt or innocence. He had already conceded his guilt by letter from counsel, by the inclusion of the fine in his chapter 13 statement and plan, and by appearing in Traffic Court offices. *Compare id.*

■ From the responses of PennDOT and Traffic Court personnel, I conclude that defendants erroneously believed that the debtors' bankruptcy filings were irrelevant in restricting these collection activities. I therefore conclude that the defendants' postpetition activities violated the provisions of § 362(a)(1), (6). Under the facts as presented, I find that Traffic Court violated the stay against both debtors, and that PennDOT violated the stay only against debtor Szostek.[12]

■ I further conclude that the violations of the automatic stay as to both debtors were "willful" under 11 U.S.C. § 362(h)—not that the defendants intended to violate the provisions of the Bankruptcy Code, but that there was "deliberateness of conduct" coupled with "knowledge of the bankruptcy filing." *In re Wagner,* 74 B.R. at 903.[13] Clearly, debtors' counsel (as well as Mr. Szostek) notified Traffic Court of the pendency of their bankruptcy petitions and of the stay. PennDOT was also notified of the bankruptcies by counsel, who again explicitly referred to the automatic stay. Actions taken in spite of this knowledge constitute willful actions under section 362(h). *See id.; In re Boston Business Machines,* 87 B.R. 867 (Bankr.E.D.Pa. 1988). As a result, recovery of compensatory damages[14] may be appropriate, as

---

12. Philadelphia Traffic Court is the entity listed as creditor by both debtors in their bankruptcy documents (and is the entity to which assessed traffic violation fines are paid. *See* Exhibit complaint and Exhibits C and F attached thereto; posttrial Ex. P–1. *See also* 42 Pa.C.S.A. § 3572). I need not determine whether Penn-DOT is also a creditor (*but see* 42 Pa.C.S.A. § 3571(b)(3)) because it is well established that the acts of a noncreditor agent may violate the automatic stay. *See, e.g., In re Sechuan City, Inc.,* 96 B.R. 37 (Bankr.E.D.Pa.1989) (action of lessor's principal violated stay); *In re Stephen W. Grosse, P.C.,* 68 B.R. 847 (Bankr.E.D.Pa.1987) (creditor's attorney may be liable for compensatory damages for violating stay); *In re Demp,* 23 B.R. 239 (Bankr.E.D.Pa.1982) (creditor's attorney violated automatic stay and held in contempt of bankruptcy court); *In re Wilson,* 19 B.R. 45 (Bankr.E.D.Pa.1982) (sheriff's actions constituted willful violation of the stay; sheriff fined for those actions). *Cf. In re Rhyne,* 59 B.R. 276 (Bankr.E.D.Pa.1986) (attorney for cred-

itor violated § 524(a), barring the collection of a discharged debt).

13. In their unpaginated posttrial submission defendants contend that they understand the constraints imposed by the Bankruptcy Code and that they, in general, "voluntarily" cease collection efforts upon bankruptcy notification. They suggest the instant disputes could have been resolved by further communication by plaintiffs' counsel to Mrs. Goldberg. While I do not believe defendants sought to ignore the automatic stay, I do believe that they need to improve upon their internal procedures once they have received proper notification of a bankruptcy filing. This is necessary to protect the legitimate interests of the debtor/driver and themselves. The defendants should not rely so heavily upon subsequent actions of debtor's counsel.

14. Were compensatory damages permissible against defendants, they would be quite modest. As to plaintiff Szostek, only $93.00 of compensa-

may be attorneys' fees. *See In re McLaughlin*, 96 B.R. 554 (Bankr.E.D.Pa. 1989); *In re Sechuan City, Inc.* It would be inappropriate, though, to assess punitive damages. *See In re Norton*, 717 F.2d at 775.

Having just concluded that the actions of defendants violated the provisions of § 362(a), and that compensatory but not punitive relief would be appropriate, I must address the question of whether sovereign immunity limits the relief which may be awarded plaintiffs. Defendants assert such immunity.

In *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d at 271–72, the Third Circuit Court of Appeals clearly held that the provisions of § 362(a), the automatic stay, enjoin state governmental creditors, unless the provisions of § 362(b) apply. The Court of Appeals relied both upon legislative history (S.Rep. No. 95–989, 95th Cong. 2d Sess. 54 (1978); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 342 (1977)), U.S.Code Cong. & Admin.News 1978, p. 5787 as well as upon statutory interpretation for its conclusion.

> Indeed the fact that Congress created an exception to the automatic stay for certain actions by governmental units [in subsection 362(b)] itself implies that such units are otherwise affected by the stay.

*Id.* at 272.

Just recently, the Supreme Court in *Hoffman v. Connecticut Department of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (June 23, 1989) concluded that monetary damages against state defendants under 11 U.S.C. §§ 542(b)

and 547(b) may be limited by state sovereign immunity. Assuming that *Hoffman* does not alter the holding of *Penn Terra*—that states as creditors are enjoined by the automatic stay, except as excluded by subsection § 362(b), *cf. Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)—the inquiry remains as to the appropriate form of relief where the provisions of § 362(a) have been violated. Indeed, the four Justices who dissented in *Hoffman* suggested that the provisions of § 362(h) would not apply to state creditors. *Hoffman*, —— U.S. at —— n. 4, 109 S.Ct. at 2826 n. 4.[15]

As *Hoffman* has only just been decided, it is appropriate to request supplemental briefing and argument on this issue, especially given its significance. The parties should discuss sovereign immunity as it applies to each defendant, as it applies to fines, monetary damages and attorneys fees, *see Missouri v. Jenkins*, —— U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (discussing the assessment of attorney's fees under 42 U.S.C. § 1988), and as it applies to 11 U.S.C. § 525 and 42 U.S.C. § 1983.

 Unless the issues of sovereign immunity under § 362 differ when discussing 11 U.S.C. § 525 or 42 U.S.C. § 1983, I need not address the debtors' alternative bases for relief, as they would provide no additional recovery. Application of § 525, the interpretation of which has resulted in divergent approaches, *see generally In re Watts*, 876 F.2d 1090 (3d Cir.1989), is unnecessary when the governmental entity is a creditor, or an agent of a creditor, and undertakes postpetition actions to collect a prepetition debt in violation of the automat-

---

tory damages were proved ($63.00 fine paid plus $30.00 in lost wages). As to plaintiff Colon, any claim for damages due to her fear or anxiety that an arrest warrant for her would be issued must be affected by the absence of corroborative medical evidence. *See In re Demp*, 23 B.R. 239, 240 (Bankr.E.D.Pa.1982) (absence of medical evidence to support debtor's claim of "distress" due to violation of the stay warrants imposition of a $50.00 fine).

**15.** I have previously concluded that the provisions of § 362(h) supplement bankruptcy court power to enforce the injunction created by the automatic stay. *In re Wagner*, 74 B.R. at 902. *Accord In re Stephen W. Grosse, P.C.*, 84 B.R. 377 (Bankr.E.D.Pa.1988), *aff'd*, 96 B.R. 29 (Bankr.E.D.Pa.1989) (Fullam, C.J.), *aff'd*, 879 F.2d 857 (3d Cir.1989).

ic stay.[16]

Similarly, whether the Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) should be interpreted as precluding relief under 42 U.S.C. § 1983, given the provisions of § 362(h) (added to the Bankruptcy Code in 1984, Pub.L. No. 98–353), *compare Periera v. Chapman,* 92 B.R. 903 (C.D.Cal.1988) *with In re Maya,* 8 B.R. 202 (Bankr.E.D.Pa. 1981), may need not be resolved.

An appropriate judgment shall be entered.

For sovereign immunity purposes the source of authority in this instance may or may not be significant.

16. It seems unlikely but perhaps there may. be a category of governmental actions, postpetition, which are permitted by § 362(b) but forbidden by § 525. Any such conflict is not raised by the instant proceedings.