In re Carolyn SAUNDERS, Debtor.

Carolyn SAUNDERS, Plaintiff,

v.

Kenneth REEHER, in his capacity as Executive Director of the Pennsylvania Higher Education Assistance Agency, Gary Smith, in his official capacity as Deputy of Grants of the Pennsylvania Higher Education Assistance Agency, Wanda Watson, individually and in her official capacity as Administrative Assistant of the Pennsylvania Higher Education Assistance Agency, Defendants.

Bankruptcy No. 86–05624F.

Adv. No. 87–0903F.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 27, 1989.

Roger V. Ashodian, Delaware County Legal Assistance Ass'n, Inc., Chester, Pa., for debtor/plaintiff, Carolyn Saunders.

John D. Killian, Philip T. Van Zile, Killian & Gephart, Harrisburg, Pa., for defen-

dants, Kenneth Reeher, Gary Smith and Wanda Watson.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

This adversary proceeding arises from the refusal of a state agency to award a higher education assistance grant to the debtor for what turned out to be a brief period of time. The debtor argues that this temporary denial violated her rights under the bankruptcy code, specifically 11 U.S.C. §§ 362(a)(3), (6) and 525(a), and her rights under 42 U.S.C. § 1983. She has sought injunctive relief and damages for these violations. She also seeks punitive damages and attorneys' fees, but only for the purported violations of sections 362 and 1983. The defendants, all of whom are employees of the state agency, contend that their actions did not violate any federally created rights held by the debtor; alternatively, they argue that any damage award is barred by sovereign immunity. This dispute raises questions involving the interpretation and interrelationship of various bankruptcy provisions, the scope of § 1983, and the reach of sovereign immunity. However, federal principles concerning justiciability and mootness prevent me from resolving certain issues raised by the parties: whether defendants violated the provisions of section 525(a) and, if so, the extent of any damages suffered by plaintiff.

### I.

In contrast to the legal issues, the factual record is relatively clear.

The debtor, Carolyn Saunders, filed a voluntary petition in bankruptcy under chapter 13 on December 8, 1986. Between 1971 and 1975, the debtor had been a college student at Cheyney State University and had obtained guaranteed student loans to help finance her education. Those loans were never fully repaid; thus, in September, 1979, the Pennsylvania Higher Education Assistance Agency ("PHEAA"), which is the state agency entrusted with administering Pennsylvania's higher education grant and loan programs, and which had guaranteed these loans, declared them in default.

Among the creditors listed in the debtor's schedules was PHEAA. After receiving notice of this bankruptcy filing, PHEAA filed a proof of claim for an unsecured debt in the amount of $10,530.10 on January 23, 1987. In June 1987, the debtor's extremely modest plan was confirmed, without creditor objection, and upon recommendation of the chapter 13 standing trustee. See In re Hines, 723 F.2d 333 (3d Cir.1983). Payments pursuant to that plan were made, yielding a dividend to PHEAA of only $42.62. In October 1987, the debtor sought a chapter 13 discharge; again, after notice to all creditors and the trustee, and no objections having been lodged, the debtor received her chapter 13 discharge under 11 U.S.C. § 1328(a) on October 23, 1987.

The instant dispute arises from postpetition actions taken pursuant to the debtor's desire to pursue her college education. In April 1987, she applied for admission to Widener University, located in Chester, Pennsylvania, through that institution's "Widener Way Program." This program was designed to encourage single-parent heads of households to begin or complete their college education, and offered financial aid to accepted individuals. To obtain the financial aid package associated with this program, an educational grant from PHEAA was required. On May 4, 1987, the debtor applied for such a grant and on June 5, 1987 received a reply from PHEAA which declared her ineligible for the grant.[1]

Denial of the grant was based upon PHEAA policy that no higher education assistance grants would be made to individuals in default on student loans guaranteed

---

1. The denial letter, Ex. P–6, attachment D, was signed by defendant Watson. The parties agree that defendant Reeher is executive director of PHEAA, defendant Smith is a deputy administer in charge of grants, and defendant Watson is an administrative assistant who handled the debtor's application.

by PHEAA. The state regulation underlying this policy is set out in 22 Pa.Code § 121.4(a);[2] this regulatory provision has been incorporated by PHEAA administrators into the following policy, to which the parties have stipulated:

Policy—It is the policy of PHEAA to deny both State Grant and Loan assistance to applicants who have defaulted on an education loan guaranteed or reinsured by the Federal Government or by the government of any state or who have defaulted on a loan made by an institution of higher education except those who meet *one* of the following:

(1) Has paid the defaulted loan in full, including a borrower who has filed for bankruptcy and the loan has been discharged.

(2) Has made twelve (12) consecutive satisfactory monthly payments prior to the date the application was filed.

(3) Has filed for bankruptcy, the loan is *not* discharged but the borrower has made twelve (12) consecutive satisfactory monthly payments.

Ex. P–6, attachment I (emphasis in original).

In September 1987, the debtor wrote to PHEAA and requested that it reconsider its denial of her grant application. In the letter, she suggested that PHEAA's failure to award her a grant would run afoul of the anti-discrimination provisions of 11 U.S.C. § 525(a). Ex. P–2. PHEAA declined and the debtor initiated this adversary proceeding. A few days after the complaint was filed, the debtor received her chapter 13 discharge. Defendant Smith testified that PHEAA received notification of discharge on November 7, 1987. There-

after, on December 23, 1987, PHEAA approved the debtor as a grant recipient.

The grant approval did not end this litigation. When PHEAA denied the debtor's grant application in June 1987, and refused to reconsider its denial in September 1987, the debtor's entire financial aid package under the Widener program was made unavailable to her. Without this financial aid she was unable to matriculate for the Fall semester, 1987. The debtor testified that PHEAA's December 1987 approval also came too late for use during the Spring 1988 semester and further testified that her circumstances changed after September 1987, which changes made the Widener program unattractive. Therefore, she instead enrolled in a part-time college degree program at Neumann College in January, 1989. The debtor seeks damages from defendants based upon the difference in the costs to her between attending Neumann College and attending Widener University. She also seeks damages to recover the alleged difference in her earnings potential had she attended and completed the full-time Widener program as compared with the later completion of the part-time Neumann program. The debtor's testimony on the damage issue, which was the only testimony on this point, reflects her belief that damages in excess of $20,000.00 should be awarded.[3] *But cf. Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1412–13 (3d Cir.1985) ("measure of damages in tort cases includes those reasonably forseeable …").

## II.

In response to a pretrial motion filed by the parties requesting bifurcation of the

---

**2.** This subsection states:

(a) No award or disbursement of higher education grants will be made to any person who has allowed a loan to mature through purchase from the lender by the Agency under the Loan Guaranty Programs or who has a current loan default record with the Agency as a result of a claim on the loan having been submitted to the Agency by the lender unless the applicant has repaid the loan in whole or in part and, in the judgment of the Agency, did not make such repayment merely to gain grant eligibility or unless the applicant otherwise shows good cause why grant eligibility

should be reinstated. Higher education grants may also be denied to any person who has defaulted on an educational loan guaranteed or reinsured by the Federal Government or by the government of any other state or who has defaulted on a loan made by any institution of higher education to finance the costs of education; eligibility in these cases will be determined in the same manner as in the case of Agency-guaranteed loans.

**3.** The debtor's posttrial submissions do not quantify her damage request with any precision.

trial into liability and damage components, I issued an earlier memorandum and order in which I noted that bankruptcy courts are limited by juridical concerns such as "ripeness," "mootness" and "case-or-controversy," as are other federal courts. *See In re Weaver*, 632 F.2d 461, 462 n. 6 (5th Cir. 1980); *In re Orlando Investors, L.P.*, 103 B.R. 593 (Bankr.E.D.Pa.1989); *In re Athos Steel & Aluminum, Inc.*, 69 B.R. 515, 519 (Bankr.E.D.Pa.1987). Here, the debtor's request for injunctive relief was made moot by the defendants' decision in December, 1987 to award her the educational grant she sought. Thus, whether the entire controversy is now moot depends upon whether the debtor has a viable claim for damages. *See Murray v. Silberstein*, 882 F.2d 61 (3d Cir.1989).[4] If so, and even if the claim for damages is nominal, the controversy remains alive and justiciable. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 154 n. 2, 98 S.Ct. 1729, 1732 n. 2, 56 L.Ed.2d 185 (1978); *Finberg v. Sullivan*, 461 F.Supp. 253, 257 (E.D.Pa.1978), *rev'd on other grounds*, 634 F.2d 50 (3d Cir. 1980) (*en banc*).

The damage question itself is twofold. Clearly, one question is whether the debtor suffered any damage due to defendants' delay in awarding her a higher education grant pending the receipt of a bankruptcy discharge. The other question is whether any damages thus suffered by the debtor are statutorily compensable; that is, whether there is a statutory basis for awarding damages and, if so, whether sovereign immunity precludes an award. Because I conclude that there is no statutory basis for an award of damages payable to this debtor, the instant dispute is moot and no longer justiciable.

## A.

◼ Clearly, section 1983 liability may result in a damage award, *see Murray v. Silberstein*, even if the damages are nominal. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Thus, the question becomes whether the debtor has established a cause of action under this statute.[5] In that regard, I note that the debtor's § 1983 claim is purely derivative. That is, she contends that defendants violated the provisions of the bankruptcy code mentioned above, and under the reasoning of *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), argues that such violations trigger the provisions of § 1983. *Accord, e.g., In re Watts*, 93 B.R. 350, 357 (E.D.Pa.1988), *rev'd on other grounds*, 876 F.2d 1090 (3d Cir.1989); *Higgins v. Philadelphia Gas Works*, 54 B.R. 928, 934 (E.D.Pa.1985); *In re Maya*, 8 B.R. 202, 204–06 (Bankr.E.D.Pa.1981).

This analysis has been questioned by a number of courts which have noted that the holding of *Thiboutot* was narrowed by later decisions, specifically *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) and *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). These courts have concluded that Congress intended to establish a comprehensive enforcement mechanism for violations of the automatic stay and governmental discrimination against debtors within the bankruptcy code itself. As a result, they hold that no additional cause of action exists by virtue of § 1983. *E.g., Periera v. Chapman*, 92 B.R. 903, 906–08 (C.D.Cal.

---

4. There is no suggestion that the issue as to this debtor is not moot because the matter is capable of repetition yet evading review. *See generally Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *6A Moore's Federal Practice* ¶ 57.13 (2d ed. 1989). According to the policy of PHEAA, the debtor's discharge of her prior student loan obligation now and hereafter renders her eligible for higher education grants for which she otherwise qualifies. Thus, the debtor is not faced with a denial of any grants from PHEAA in the future. *See also Murray v. Silberstein.*

5. 42 U.S.C. § 1983 provides, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."

1988); *In re Begley,* 41 B.R. 402, 408 (E.D. Pa.1984).

*Thiboutot, Sea Clammers,* and *Halderman* strove to interpret the meaning of the phrase "and laws" found in § 1983. One only reaches this issue if the other predicates of § 1983, including the existence of a "person" acting under color of state law and causing the complained-of deprivation, have been established. In *Will v. Michigan Dept. of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court has just held that, insofar as damages (as opposed to injunctive relief) are sought, state officials acting in their official capacities [6] are not "persons" within the meaning of § 1983, as "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." 109 S.Ct. at 2311. That being so, the debtor here has failed to state a claim for damages under § 1983 regardless of whether violations of the bankruptcy code are actionable under that statute.

### B.

■ As with section 1983, violations of the automatic stay may result in the award of damages, and may also result in an award of punitive damages and attorneys' fees. 11 U.S.C. § 362(a), (h). *See, e.g., In re Sechuan City, Inc.,* 96 B.R. 37 (Bankr. E.D.Pa.1989); *In re Stephen W. Grosse, P.C.,* 84 B.R. 377 (Bankr.E.D.Pa.1988), *aff'd,* 96 B.R. 29 (E.D.Pa.1989), *aff'd without op.,* 879 F.2d 857 (3d Cir.1989); *In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987). Whether these awards may be assessed against a state governmental entity is made complicated by the recent Supreme Court decision *Hoffman v. Connecticut Dept. of Income Maintenance,* —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). *See generally In re Colon,* 102 B.R. 421,

430 (Bankr.E.D.Pa.1989). It is further complicated where, as here, the state entity has filed a proof of claim. At issue is not only the source of court power to award damages (and other relief) and the impact of sovereign immunity upon such power, but the extent to which the state creditor waives immunity by filing a proof of claim is open to legitimate debate.

Recently, in *In re Lile,* 96 B.R. 81 (Bankr.S.D.Tex.1989), a bankruptcy court concluded that a debtor's cause of action against the Internal Revenue Service for violation of the automatic stay "arose out of the same transaction or occurrence out of which such governmental unit's claim arose." 11 U.S.C. § 106(a). As a result, the proof of claim filed by the IRS in that case was held to completely extinguish whatever damage immunity it may have had and to subject it to monetary liability for breach of the stay in excess of its claim. *See generally* H.R.Rep. No. 595, 95th Cong. 1st Sess. 317 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *In re O.P.M. Leasing Services, Inc.,* 21 B.R. 993, 1000–02 (Bankr.S.D.N.Y.1982). *But see In re Darling Hardware,* 64 B.R. 544, 551–52 (Bankr.W.D.Mich.1985) (construing the compulsory counterclaim concept of § 106(a) more narrowly).

Assuming that the conclusion in *Lile* is correct, and that the debtor here could recover damages and attorneys' fees for defendants' failure to comply with the injunctive provisions of § 362(a), the question remains whether the debtor established that defendants in fact violated § 362(a).

The debtor, relying heavily upon the lower court decisions of *In re Watts,* 76 B.R. 390 (Bankr.E.D.Pa.1987), *aff'd,* 93 B.R. 350 (E.D.Pa.1988), *rev'd,* 876 F.2d 1090 (3d Cir. 1989),[7] contends that the actions of defen-

---

6. While the complaint seeks relief against one defendant in her individual capacity, there is no basis in the record for such liability. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 638 n. 18, 100 S.Ct. 1398, 1409 n. 18, 63 L.Ed.2d 673 (1980); *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). The evidence is clear that all actions taken by defendants were in

accord with and pursuant to articulated agency policy to deny grants until the order of discharge was entered or twelve monthly payments were made.

7. The debtor also argues that violations of § 525(a) result in "concomitant violations" of § 362(a). Debtor's posttrial memorandum, at 12. While it is possible to have some overlap

dants violated the provisions of § 362(a)(3) and (a)(6).[8]  Respectfully, I disagree.

■ As discussed in section I above, defendants' only postpetition actions were to deny the debtor a higher education grant pending notice of her bankruptcy discharge.  Once they were notified that the discharge was granted, the educational aid grant was awarded.  No effort was made to collect a prepetition debt; no demand was made of the debtor for repayment; no attempt was made to coerce payment.[9]  *Compare In re Sechuan City, Inc.*  As the Third Circuit Court of Appeals has instructed, communication of institutional policy which is not designed to coerce repayment does not constitute a violation of § 362(a)(6).  *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 (3d Cir.1988).  *See also Morgan Guaranty Trust Co. v. American Sav. & Loan Assoc.*, 804 F.2d 1487 (9th Cir.1986), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).  Such reasoning is applicable to the facts in the instant dispute.

Similarly, the Third Circuit concluded in *In re Watts* that a refusal by a governmental agency to provide benefits to a debtor, pending the outcome of a bankruptcy case, does not represent an attempt to exercise possession or control of estate property for purposes of § 362(a)(3).[10]  *See In re Chateaugay Corp.*, 87 B.R. 779, 801 (S.D.N.Y. 1988); *In re Continental Air Lines, Inc.*, 61 B.R. 758, 777–780 (S.D.Tex.1986).  *See also In re Carver*, 828 F.2d 463 (8th Cir. 1987).  While *Watts* was concerned with a mortgage assistance loan and so discussed

§ 365(c)(2), the Court of Appeals understood that there was a grant component to this mortgage assistance.  876 F.2d at 1093 n. 2.  Thus, the instant denial of a college education grant pending notice of the debtor's discharge did not violate § 362(a)(3). *Accord In re Continental Air Lines, Inc.* Therefore, whether a governmental creditor that files a proof of claim and violates some provision of § 362(a) has fully waived its immunity by virtue of § 106(a) (or by some other analysis) or only partially abrogated its immunity by virtue of § 106(b) is an issue that I need not resolve.  *See generally WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996 (1st Cir.1988).

### C.

The last statutory basis relied upon by the debtor is 11 U.S.C. § 525(a).  In fact, it is this provision that is principally asserted.  Essentially, the debtor contends that she was denied a state college assistance grant solely because she was in default in repaying a prepetition state guaranteed student loan obligation—an obligation dischargeable in her pending bankruptcy case at the time the grant was denied.  As she sought a grant and not a student loan, thus eliminating the issue of her ability to repay, she distinguishes decisions such as *In re Goldrich*, 771 F.2d 28 (2d Cir.1985), which focus in part upon "future financial responsibility or ability," S.Rep. No. 95–989, 95th Cong., 2d Sess. at 81 (1978), U.S.Code Cong. & Admin.News 1978, p. 5867, as a legitimate basis for state action.  *Accord, In re Richardson*, 27 B.R. 560 (E.D.Pa.1982); *In re*

---

between these two statutory provisions, they were designed to address different concerns; thus, an overlap was not necessarily part of the congressional design, as will be discussed below.

**8.**  These subsections state as follows:
   a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—
      (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
            \*   \*   \*   \*   \*   \*

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

**9.**  Indeed, as defendants fairly suggest, coercion was not even a viable consideration since the amount of the grant was likely to be a small fraction of the prepetition debt.  It would be unrealistic to think that any debtor would feel compelled to repay a large prepetition loan balance in order to obtain a much smaller postpetition grant.

**10.**  I assume *arguendo* that an entitlement to an educational grant, based upon an application submitted postpetition, constitutes estate property under the broad mandate of § 1306(a).

*Elter,* 95 B.R. 618 (Bankr.E.D.Wisc.1989). Instead, the debtor likens her circumstances to those set out in decisions such as *Matter of Elsinore Shore Associates,* 66 B.R. 708 (Bankr.D.N.J.1986); *In re Reese,* 38 B.R. 681 (Bankr.N.D.Ga.1984); and *Matter of Gibbs,* 9 B.R. 758 (Bankr.D.Conn. 1981), *aff'd in part on other grounds,* 76 B.R. 257 (D.Conn.1983), in which courts have held that governmental entities violated the provisions of § 525(a).[11]

Defendants contend that § 525(a) is not applicable in the situation at bench until PHEAA's prepetition debt is actually discharged.[12] *Cf. In re Johnson–Allen,* 871 F.2d 421, 423 (3d Cir.1989) (determination of dischargeability of debt in chapter 13 should await completion of plan payments). *But see In re Reese; Matter of Heath,* 3 B.R. 351 (Bankr.N.D.Ill.1980). *But cf. Johnson v. Edinboro State College,* 728 F.2d 163 (3d Cir.1984) (court holds that no violation of § 525(a) occurs when the prepetition debt is non-dischargeable but implies that the dischargeability of the debt rather than the event of discharge is relevant). Thus, they argue that they have fully complied with their obligations to this debtor under this subsection of the bankruptcy code by approving her grant application after receiving notice of her discharge.

While all courts have recognized (based upon legislative history) that the congressional intent in enacting § 525(a) was to codify the Supreme Court decision of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), there has been understandable difficulty in defining the exact scope of this subsection given its language and legislative history. *See generally In re Rees,* 61 B.R. 114 (Bankr.D.Utah 1986). It seems clear to me, though, that § 525(a) was not designed to be another manifestation of the automatic stay. While I recognize that a prepetition governmental creditor is capable of taking discriminatory post-

petition action designed to coerce or obtain repayment of its claim, such conduct is addressed by the broad provisions of § 362(a). *See generally In re Colon.*

Section 525(a) instead was intended to reach non-creditor governmental (or quasi-governmental) entities that, in their quest to protect the public interest, wrongfully discriminate against debtors and frustrate the "fresh start" policy of the bankruptcy code by denying property interests not obtainable through the private sector. *Cf. In re Exquisito Services, Inc.,* 823 F.2d 151 (5th Cir.1987) (while § 525(a) does not prohibit all governmental discrimination, it does bar a governmental refusal to renew food services contract where that contract is awarded under a program designed to provide governmental assistance to small and minority owned businesses). Unless the governmental entity was acting as an agent for a creditor, *see In re Colon,* such conduct would not run afoul of § 362. *See Matter of M. Frenville Co.,* 744 F.2d 332, 335 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (automatic stay does not apply to entity that holds no prepetition claim). *See also Taylor v. First Federal Sav. & Loan Assoc.,* 843 F.2d 153, 154 (3d Cir.1988).

The *Perez* decision itself demonstrates that § 525(a) was intended to reach governmental non-creditors since the defendant, the Arizona Department of Motor Vehicles, possessed no claim against the estate. The Department's denial of a driver's license to the discharged debtor, when viewed by current bankruptcy code terminology, would not violate the bankruptcy stay under § 362(a). Moreover, such action, if taken after discharge, arguably would also not violate the discharge injunction under § 524(a). *See, e.g., In re White Motor Credit Corp.,* 37 B.R. 631 (N.D.Ohio 1984), *aff'd,* 761 F.2d 270 (6th Cir.1985). *See also*

---

11. The debtor also relies heavily upon the bankruptcy court and district court decisions in *In re Watts,* but, as noted above, those decisions have been overturned.

12. While defendants contend that PHEAA is entitled to see whether a debtor will receive a discharge before acting affirmatively upon a debtor's application for a loan or grant, I note that their stipulated policy allows for an affirmative action after twelve consecutive payments have been made. (It is unclear whether twelve consecutive chapter 13 plan payments would suffice.) This may occur long before a discharge is granted.

*In re Sullivan,* 90 B.R. 307 (M.D.Tenn. 1988). Without a provision such as § 525(a), such conduct—absent a successful constitutional challenge under the Supremacy Clause—might not be prohibited.[13] That the breadth of § 525(a) may overlap with the broad automatic stay provisions does not alter its primary purpose.

■ Given this congressional purpose, whether defendants' delay or initial refusal concerning the instant educational grant falls within the scope of § 525(a) need not be decided in this proceeding. Assuming *arguendo* that such conduct did indeed violate section 525(a), *but cf. In re Watts,* 876 F.2d at 1093 n. 2,[14] I conclude that a violation of that subsection could not yield a claim for damages payable to the debtor on the facts presented in this dispute.[15]

The only reported decision to address the issue concluded that no damages for the violation of § 525(a) would lie, and only declaratory and injunctive relief were appropriate. *Matter of Marine Electric Railway Products Division, Inc.,* 17 B.R. 845, 854 (Bankr.E.D.N.Y.1982). *But see* 1 *Norton Bankruptcy Law and Practice,* § 27.06 (1988). I find that the court's conclusion in *Marine Electric* is overbroad; rather, the potential damage liability of a governmental entity that violates the provisions of § 525(a)—a statutory provision addressed solely to governmental entities—is co-extensive with such entity's waiver of sovereign immunity.[16]

Section 525(a) makes no mention of damages as a remedy against those who violate its terms. Thus, the central question to answer is whether Congress intended such a remedy to be implied. *See Sanchez–Es-*

*pinoza v. Reagan,* 770 F.2d 202, 209 (D.C. Cir.1985). *See also Polaroid Corp. v. Disney,* 862 F.2d 987, 995 (3d Cir.1988); *Crown Cork & Seal v. Teamsters Pension Fund,* 549 F.Supp. 307, 311 (E.D.Pa.1982), *aff'd without op.,* 720 661 (3d Cir.1983).

Under two other anti-discrimination provisions of the Code, 11 U.S.C. §§ 366(a) and 525(b), damages have been awarded against those who violate their terms, even though no such statutory remedy was expressed. *See, e.g., In re Whittaker,* 92 B.R. 110, 115–16 (E.D.Pa.1988), *aff'd,* 882 F.2d 791 (3d Cir.1989) (§ 366(a)); *In re Hicks* (§ 525(b)). However, sections 366(a) and 525(b) are directed primarily against non-governmental parties, while the principle purpose of section 525(a) is to address certain non-creditor governmental conduct. This distinction is significant.

The clearest expression of congressional intent concerning the potential liability of governmental units for violations of bankruptcy code provisions is found in § 106 and its legislative history. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 317 (1977). Until recently, the interpretation given by the Third Circuit Court of Appeals to 11 U.S.C. § 106(c) suggested that Congress intended that the violation by a state governmental entity of a statutory provision which expressly referred to a governmental unit (such as in § 525(a)) could result in an award of provable damages. *See Vazquez v. Pennsylvania Dept. of Public Welfare,* 788 F.2d 130 (3d Cir.), *cert. denied,* 479 U.S. 936, 107 S.Ct. 414, 93 L.Ed.2d 365 (1986). *See also In re McVey Trucking, Inc.,* 812 F.2d 311 (7th Cir.), *cert. denied,* 484 U.S. 895, 108 S.Ct. 227, 98

---

**13.** As neither party presents the issue, I do not decide whether the Supremacy Clause, U.S. Const., Art. VI, cl. 2, restricts governmental actions toward debtors more broadly than § 525(a). *Cf. Perez v. Campbell* (invalidating a state statute based solely upon the Supremacy Clause).

**14.** Such an assumption also requires that any discriminatory action be based "solely" upon one of a number of factors set out in § 525(a). *See, e.g., In re Norton,* 867 F.2d 313 (6th Cir. 1989). I do not understand defendants to challenge relief on this point.

**15.** The debtor does not seek attorneys' fees for the purported violation of § 525(a). *Cf. In re Hicks,* 65 B.R. 980, 984–85 (Bankr. W.D.Ark. 1986) (attorneys' fees cannot be awarded for violations of § 525(b)). Thus, I need not determine whether such an award is permissible, *see Murray v. Silberstein,* and, if so, whether that would render this dispute justiciable.

**16.** I need not, in the resolution of this proceeding, address whether damages may be assessed against governmental units which do not possess sovereign immunity.

L.Ed.2d 186 (1987). *Cf. Gardner v. Pennsylvania Dept. of Public Welfare,* 685 F.2d 106, 109 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982) (holding the § 106(c) codified the longstanding power of Congress to adversely affect state held liens in bankruptcy). However, in *Hoffman v. Connecticut Dept. of Income Maintenance,* — U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the Supreme Court held that § 106(c) did not, by itself, override a state's sovereign immunity from damage awards. The Court was careful to note, though, that the state entity had not filed a proof of claim in *Hoffman* .and, as a result, the provisions of § 106(a) and (b) were inapplicable.

■ The *Hoffman* decision (along with other Court decisions such as *Will*), the absence of an express remedy in § 525(a), and the congressional position articulated in the legislative history surrounding § 106, yield the conclusion that unless a governmental entity[17] files a proof of claim, only declaratory and injunctive relief could be awarded against that entity under § 525(a) and no damages against it would lie.[18] *Cf. In re Browne,* 101 B.R. 188 (Bankr.D.Alaska 1989) (absent a waiver of immunity, damages may not be awarded against a state entity in a turnover proceeding). In this case the state agency, PHEAA, filed a proof of claim and received distribution under a confirmed plan. Thus, the provisions of § 106(a) or (b) are relevant.[19] While such provisions may limit any damage award rendered against defendants in their official capacities,[20] they do override state sovereign immunity to a certain extent, which extent represents a congressional determination regarding the appropriate scope of relief under § 525(a). *Cf. In re Watts,* 76 B.R. at 409 (no dam-

ages awarded for section 525(a) violation due, in part, to the "faint spectre of the applicability of the Eleventh Amendment").

Even though I conclude that a violation of § 525(a) may yield a damage award against the offending entity to the extent that sovereign immunity does not bar such an award, and even though I conclude that defendants' immunity was partially waived by virtue of PHEAA's filing of a proof of claim, I nonetheless conclude that the debtor's claim under § 525(a), asserted in count one of her complaint, is no longer justiciable. This follows because the provisions of § 106(b) rather than § 106(a) apply.

I cannot view the debtor's claim under § 525(a) as arising from the same transaction as PHEAA's claim against her. *See generally WJM, Inc. v. Massachusetts Dept. of Public Welfare; Lee v. Schweiker,* 739 F.2d 870 (3d Cir.1984); *Beach v. KDI Corp.,* 490 F.2d 1312, 1321 n. 16 (3d Cir. 1974); *In re Monongahela Rye Liquors, Inc.,* 141 F.2d 864 (3d Cir.1944). The latter claim is based upon a breach of student loan contracts entered into years prior to the debtor's bankruptcy filing; the former claim stems from defendants' postpetition refusal to grant further educational assistance—which was not intended to coerce repayment of the prior loans. This refusal was based upon a policy distinct from PHEAA's contractual rights under its earlier loan agreement.[21] As a result, PHEAA's filing of its proof of claim resulted in only a partial waiver of immunity pursuant to § 106(b). Any damages which would flow from defendants' violation of § 525(a) would simply be offset against PHEAA's allowed unsecured claim. No affirmative recovery is permitted. *See In re Braniff Airways, Inc.,* 42 B.R. 443, 450 (Bankr. N.D.Tex.1984).

---

**17.** For purposes of this dispute, I am referring to entities that may assert sovereign immunity. (See footnote 16 *supra*.)

**18.** Whether damages could properly be assessed against a governmental entity which failed to comply with declaratory or injunctive relief issued under § 525(a) is not presented here. *See In re Watts,* 76 B.R. at 409 (such a damage award would be appropriate). *Cf., In re Stephen W. Grosse, P.C.* (damages may be awarded for violation of court imposed injunction).

**19.** This proceeding involves postpetition actions. Nonetheless the provisions of § 106(a) and (b) are likely applicable here since, pursuant to § 1306(a), postpetition property interests of the chapter 13 debtor are included in property of the estate. Defendants do not address this point.

**20.** See footnote 6, *supra*.

**21.** Indeed, this policy covers defaults of both PHEAA and non-PHEAA loans.

At this point, the debtor has had her chapter 13 plan confirmed, her discharge granted, and her educational grant approved. Any offset in PHEAA's claim would be of no benefit to her; instead, it would simply reduce the amount of PHEAA's distribution under the plan and increase the distribution received by other creditors who have filed proofs of claim. *See also* 11 U.S.C. § 1325(b). As no such creditors are parties to this proceeding, nor is the standing chapter 13 trustee, and as the debtor would be unaffected by a determination that PHEAA's policy violated § 525(a) since no affirmative recovery is possible, count one of her complaint is no longer justiciable.

### III.

In sum, the debtor has failed to state a claim under 42 U.S.C. § 1983, and has failed to demonstrate that defendants violated the provisions of 11 U.S.C. § 362(a)(3), (6). Furthermore, her claim that defendants violated the provisions of § 525(a) can no longer be decided. *See also Murray v. Silberstein.* Thus, an appropriate order dismissing count one of her complaint, and entering judgment for defendants on counts two and three shall be entered.