Commonwealth *v.* Liederkrantz et al., Appellants.

Argued May 23, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Jack W. Plowman,* with him *Plowman and Spiegel,* for appellant.

*Alexander J. Jaffurs,* Assistant Attorney General, with him *Albert B. Miller,* Special Assistant Attorney General, and *J. Shane Creamer,* Attorney General, for Commonwealth, appellee.

Opinion by Mr. Justice Manderino, January 19, 1973:

On May 1, 1965, one of the appellants, Beltzhoover Liederkrantz (Liederkrantz) was issued a club liquor license for the license year ending April 3, 1966, pursuant to the Liquor Code, Act of April 12, 1951, P. L. 90, as amended, art. I, §101, 47 P.S. 1-101 et seq. As required by Section 465 of the Liquor Code, Liederkrantz filed with the Pennsylvania Liquor Control Board a bond in the amount of $2,000. The other appellant, American Casualty Company of Reading, Pennsylvania (American), was the surety on the bond. The condition of the bond was that the licensee, Beltzhoover

Liederkrantz, would faithfully observe all laws of the Liquor Code and regulations of the Liquor Control Board. On February 24, 1966, the Liquor Control Board cited Liederkrantz for certain violations and requested him to show cause why his license should not be revoked and their bond forfeited.

On May 1, 1966, Liederkrantz's club license was renewed for the license year ending April 30, 1967. The license for the year ending April 30, 1967 was issued while the citation for violations under the prior license was still pending. As required by the Liquor Code, Liederkrantz filed a second bond in the amount of $2,000. American was also the surety on the second bond. Subsequently, on August 31, 1966, the Liquor Control Board issued a second citation to Liederkrantz, for violations occurring during the period of time covered by the second license.

A hearing concerning the violations occurring in both license years, 1965-1966 and 1966-1967, resulted in the Liquor Control Board revoking the two licenses and directing a forfeiture on both bonds in accordance with Section 465(e) of the Liquor Code which provides: "Every such bond may be forfeited when a license is revoked and shall be turned over to the Attorney General for collection if and when the licensee's license shall have been revoked and his bond forfeited as provided in this act."

The Commonwealth entered separate judgments on each bond. Each judgment was in the amount of $2,-000. American then filed a petition to strike the $2,000 judgment entered on the second bond for the license year 1966-1967. On September 8, 1971, a Commonwealth motion was granted dismissing American's petition to strike the judgment.

American argues that a surety on a liquor bond is not liable cumulatively for each year the bond is writ-

ten and, thus, it should not have been required to forfeit the second $2,000 when the licenses were revoked. It contends that there is but one license to be revoked and, therefore, but one bond to be forfeited. In support of this position, American asserts that the Liquor Code speaks of renewal of licenses and this implies one continuing license.

Section 434 of the Liquor Code, however, specifically provides that a liquor license is a one year license and not a continuing license. Section 434(a) states: "Licenses issued under this article to distributors, importing distributors and retail dispensers shall, unless revoked in the manner provided in this act, be valid for the license year which may be established by the Board for the particular license district in which the license issues."

Renewal of a license is not an automatic procedure requiring only a ministerial function of collecting new fees and issuing a new piece of paper. Under Section 470(a) all renewal of licenses must be accompanied by an application and the required information contained in each application is set forth in Section 436. The required information on the yearly application is then checked to determine if the licensee qualifies as originally, for a license covering a new year's period.

Section 470 of the Liquor Code clearly indicates that there is a different license for each year, not a continuing license, and a different bond for each license. Section 470(a) provides in part: "All applications for renewal of licenses under the provisions of this article shall be filed with a *new bond*. . . ."

Section 470(b) provides in part: "In cases where a licensee or his servants, agents or employees are arrested, charged with violating any of the laws of this Commonwealth relating to liquor, . . . and a proceeding to revoke such licensee's license is or is about to be insti-

tuted, and such arrest occurs or report of violations is received or revocation proceeding instituted or about to be instituted during the time a renewal application of such license is pending before the board, the board may, in its discretion, renew the license notwithstanding such alleged violation, but such *renewal license* may be revoked if and when the licensee or any of his servants, . . . are convicted of or plead guilty to violations under *the previous license,* as aforesaid, or if and when such *previous license,* is for any reason revoked." (Emphasis supplied.)

The Code clearly states that there are two licenses; one license for the *previous year* and one, the *renewal license,* for the subsequent year. The Code provides that the renewal license, issued for the subsequent year, may be revoked when the previous license is revoked. The Code provides for two distinct licenses and a separate revocation for each.

The same issue was considered in *Commonwealth v. South Side World War Veteran's Association,* 88 Dauphin 57 (1967). In commenting on whether or not there was one obligation or two obligations for violations of the Liquor Code in two succeeding years, the court stated: "There is no dispute that the licensee violated the laws of the Commonwealth and the rules and regulations promulgated by the Board relating to licenses in each of the two license years in question. It is equally clear that the bonds filed with each of the applications were, according to the terms thereof, forfeited and the Board was entitled to proceed to the collection of the penal sum provided for in the bonds. The clear and unambiguous conditions of each of these obligations were admittedly breached. It cannot now be said that the bonds were meant to be, or can be construed to be, but one obligation for compliance with law during both license years."

American's position that there is a continuing license from year to year requiring only one $2,000 bond is not supported by the provisions of the Liquor Code.

American next argues that the forfeiture of two surety bonds, one for each license year, is discriminatory in favor of licensees using cash bonds rather than surety bonds, and that this result was not intended by the legislature. American's argument assumes that a single cash bond of $2,000 is all that the law requires and such bond will cover more than one license.

American calls our attention to Section 465(b) of the Liquor Code which provides: ". . . In all cases where cash or securities in lieu of other surety have been deposited with the board, the depositor shall be permitted to continue the same deposit from year to year on each renewal of license, but in no event shall he be permitted to withdraw his deposit during the time he holds said license, or until six months after the expiration of the license held by him, or while revocation proceedings are pending against such license. . . ." American construes this language to mean that the legislature intended that a licensee depositing a cash bond would never be required to deposit additional collateral before he could obtain a renewal license. Therefore, contends American, since the legislature did not expect additional security where a cash bond is involved, it is not reasonable to conclude that they expected additional security when a surety bond is involved.

We do not agree that Section 465(b) authorizes a single cash bond of $2,000 that will validly cover more than a single license year simultaneously under all circumstances. We must interpret the various sections of the Liquor Code in relation to one another. A review of Sections 434, 465, and 470 of the Liquor Code indicates that, contrary to American's interpretation of Section 465(b) of the Liquor Code, a licensee filing a

cash bond may be required to deposit additional security before a renewal license is issued.

Under Section 434, a liquor license is valid for a period of one year from the date of issuance.

Under Section 465(a), "No license shall be issued to any applicant under the provisions of this article until such applicant has filed with the Board an approved bond. . . ."

Under Section 470(a), ". . . A renewal application will not be considered filed unless accompanied by *a new bond* and the requisite filing and license fees and any additional filing fee required by this section." (Emphasis supplied.)

A license is valid for only one year. The bond or surety, covers a license. After a year's period a license expires and a renewal license must be issued. When an applicant files for a renewal license a new bond must also be filed and it must be secured by either a cash deposit or a surety agreement.

The reading of the above Sections as in pari materia with each other and with Section 465(b) does not support American's argument that cash bond requirements differ from surety bond requirements. Section 465(b), relied on by American, states that the applicant cannot withdraw his cash deposit during the time he holds a license, or until six months after the expiration of the license, ". . . or while revocation proceedings are pending against . . ." the license he holds. To permit the use of a single cash deposit covering one license year to also apply to a renewal license when revocation proceedings are pending against the prior license, would in effect be permitting the *withdrawal* of the cash deposit for the prior year's license. This is prohibited by Section 465(b). The Liquor Code does not discriminate in favor of bonds in the form of cash deposits. When revocation proceedings are pending against a license,

as they were in this case, a renewal license requires a *new cash deposit* in order to meet the requirement of *a new bond.*

American's final argument is that when a violation is pending under a previous license and a new license is issued, Section 470(b) prohibits the bond for the renewal license from being forfeited when the previous license is revoked. Section 470(b) provides: "In cases where a licensee or his servants, agents or employees are arrested, charged with violating any of the laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, and where the board has on file in such cases reports of its enforcement officers or investigators or from other sources that a licensee or his servants, agents or employees have violated any of the aforementioned laws and a proceeding to revoke such licensee's license is or is about to be instituted, and such arrest occurs or report of violations is received or revocation proceeding instituted or about to be instituted during the time a renewal application of such license is pending before the board, the board may, in its discretion, renew the license, notwithstanding such alleged violations, but *such renewal license may be revoked if and when the licensee or any of his servants, agents or employees are convicted of or plead guilty to violations under the previous license, as aforesaid, or if and when such previous license is for any reason revoked.*

*"In the event such renewal license is revoked by the board, neither the license fee paid for such license nor any part thereof shall be returned to the licensee, but the license bond filed with the application for such renewal of license shall not be forfeited."* (Emphasis supplied.) Section 470(b) applies to the revocation of a renewal license based solely on the revocation of the prior year's license for violations occurring during the time

of the prior year's license. Under such circumstances, no violations have occurred during the year of the renewal license and thus, the forfeiture conditions of the bond covering the renewal license have not occurred. Section 470(b) thus prohibits the forfeiture of the bond covering the renewal license. Section 470(b) does not prohibit, as American contends, the forfeiture of the bond for the renewal license when, as in the present case, the renewal license is revoked for violations occurring under the renewal license. Under such circumstances, the forfeiture conditions of the bond covering the renewal license have occurred since the licensee has not faithfully observed the Liquor Code laws or the Liquor Control Board regulations during the time covered by the renewal license.

In this case violations occurred in both license years for which bonds were forfeited. The forfeiture of both bonds was therefore mandatory.

Order affirmed.

Mr. Justice NIX concurs in the result.