**VASPOURAKAN, LTD.,**
**Plaintiff/Appellant,**

v.

**LICENSING BOARD FOR the CITY OF BOSTON, Defendant/Appellee.**

**No. 87–2249–Y.**

United States District Court,
D. Massachusetts.

April 15, 1988.

Harold B. Murphy, Hanify & King, Boston, Mass., for Herbert C. Kahn, trustee.

Bernard P. Rome, Rome & George, Boston, Mass., for the proposed purchaser, Vaspourakan, Ltd.

Harrison A. Fitch, Fitch, Miller & Toures, Boston, Mass., for Licensing Bd. of Boston.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Vaspourakan, Ltd. ("Vaspourakan") here appeals, pursuant to 28 U.S.C. § 158(a), a final order of the Bankruptcy Court denying its motion for an order of conveyance of a liquor license.

### I. *Procedural History*

Vaspourakan is a debtor under Chapter 11 of the Bankruptcy Code. The sole shareholder of Vaspourakan is Alexan Kavlakian. *See Matter of Yerevan*, at 1 (Licensing Board for the City of Boston, May 22, 1987), Brief of Defendant–Appellee at Exhibit B. Vaspourakan filed a motion below seeking to have the Bankruptcy Court order the Licensing Board for the City of Boston (the "Board") to transfer a common victuallers seven day all alcoholic

beverages license (the "License") held by Herbert C. Kahn, Trustee in Bankruptcy of Yerevan, Ltd. ("Yerevan"), to Vaspourakan. Yerevan is a Chapter 7 debtor. Its shareholders appear to be Alexan Kavlakian and his brother, Sarkis Kavlakian. *See Matter of Yerevan* at 1.

The Board, in a decision dated May 22, 1987, refused to permit the transfer. *See Matter of Yerevan* at 1. The Bankruptcy Court denied Vaspourakan's motion to order the Board to permit the transfer on the ground that the Board's denial was "a valid exercise of its statutory authority to regulate the licensing of alcoholic beverages. *See* M.G.L. c. 138, § 23." *Kahn v. Gargiulo (In re Yerevan, Ltd.)*, No. 85–00624–TL, slip op. at 3. (Bankr.D.Mass. July 21, 1987). This Court agrees and therefore affirms the Bankruptcy Court's opinion.

### II. *Discussion*

The law is well settled that the Bankruptcy Court cannot interfere with a state agency's legitimate use of its police powers. *See, e.g., Palmer v. Massachusetts*, 308 U.S. 79, 90 n. 17, 60 S.Ct. 34, 39 n. 17, 84 L.Ed. 93 (1939) (holding that "Congress did not intend that those who operated a business under the control of a federal court [including trustees in bankruptcy] should be immune from the regulatory authority of the several states"); *Colonial Tavern, Inc. v. Byrne*, 420 F.Supp. 44, 45 (D.Mass.1976) (holding that "the powers of a Bankruptcy Court do not extend to interference in the comprehensive regulatory laws of a state" and affirming the Bankruptcy Court's refusal to grant a preliminary injunction enjoining the Board, among others, from enforcing a sixty-day suspension of liquor licenses held by Chapter 11 debtors where the suspension was imposed for violation of a midnight closing hour order); *cf. Cournoyer v. Town of Lincoln*, 790 F.2d 971, 977 (1st Cir.1986) (holding that a town seeking to clear a debtor's property of used truck parts in exercise of its police powers was exempt from the automatic stay provisions of the Bankruptcy Act.)[1]

---

1. An exception to this rule applies in cases

where the state "acts for a pecuniary purpose,"

Vaspourakan accepts this legal framework, but appears to argue that the Board is cloaking itself in its police powers when, in fact, its actions are the result of prejudice on the part of the Board toward the Kavlakian brothers. Vaspourakan therefore urges this Court to look behind the Board's ostensible exercise of police power to determine if its alleged reasons for denying the transfer are, in fact, legitimate.

█ Assuming, without deciding, that this Court has the power to undertake this kind of determination, as Vaspourakan asserts it has pursuant to *Perez v. Campbell*, 402 U.S. 637, 641–42, 649, 656, 91 S.Ct. 1704, 1707, 1711, 1714, 29 L.Ed.2d 233 (1971) (holding that an Arizona statute stating that a discharge in bankruptcy following the rendering of a judgment as the result of an automobile accident did not relieve uninsured judgment debtors from either posting a bond or having their licenses suspended was in direct conflict with § 17 of the Bankruptcy Act and was thus unconstitutional as violative of the Supremacy Clause),[2] the Bankruptcy Court's refusal to order conveyance must still be affirmed. The record reveals beyond question that the Board's actions were a legitimate exercise of its police power. The Board, describing the Kavlakians' record as one of the two or three worst among the Board's 1200 licensees, listed several reasons for denying the transfer of the license in its decision. *Matter of Yerevan* at 3. First, the Board found that there was no need for an additional restaurant at the transferee's proposed location. *Id.* at 1.

Indeed, a map attached to the decision shows that there are sixteen liquor-licensed premises within three blocks of the proposed location. *Id.* at 4. Second, the premises to which the license is proposed to be relocated formerly housed another nightclub called Cache. The Cache license was owned by Vaspourakan—Alexan Kavlakian as the sole shareholder—and Cache's manager was Sarkis Kavlakian. The Cache license was revoked because the club engaged in a conscious program of racial discrimination in the admission of patrons, permitted cocaine use on the premises, and permitted overcrowding on three separate occasions. *Id.* at 1.

Further, the Board noted that the Kavlakians' license for another Allston nightclub, Casablanca, held through the entity Yerevan, was suspended four times in 1984 and 1985 as follows: one day for permitting patrons to be on the premises after hours; one day for a lack of kitchen equipment on the premises; two days for overcrowding; and thirty days for disorder and hindering agents of the Board. *Id.* at 2.

Finally, in addition to the unsavory track record of the Kavlakians, the Board was also concerned with parking problems in the area caused by the plethora of bars already there. Several neighborhood residents, the police department, the Mayor, and the District City Councillor all testified against the transfer. *See Matter of Yerevan* at 2.

Vaspourakan quibbles with many of these reasons[3] and argues implicitly that

---

rather than " 'to prevent or stop violation of ... safety, or similar police or regulatory laws....' H.R.Rep. 595, 95th Cong., 1st Sess. 342–43 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51–52 (1978) *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5837, 5838, 5963, 6299." *In re Hoffman*, 65 B.R. 985, 988 (D.R.I.1986) (Selya, J.) (distinguishing *Colonial Tavern* and holding that a trustee in bankruptcy could sell a liquor license despite objections of the Rhode Island Division of Taxation which was owed taxes by the debtor licensee because the collection of taxes by the Division did not constitute regulatory action of the sort which Congress meant to except from the Bankruptcy Code's automatic stay provision).

**2.** *See In re Hoffman*, 65 B.R. at 988 (interpreting *Perez* to mean that "state and local governmental units cannot, merely by invoking the nominal exercise of their police or regulatory powers, circumvent the prophylaxis afforded to debtors and creditors alike by federal bankruptcy law" and holding that a trustee for a debtor in bankruptcy could transfer the debtor's liquor license free and clear of the debtor's state tax obligations).

**3.** For example, Vaspourakan asserts that the concern with parking is a red herring because arrangements have been made to provide an unspecified amount of off-street parking. However, it is unclear if that parking could begin to accommodate the 599 patrons Vaspourakan

the Board was motivated by some sort of personal dislike for the Kavlakians, the evidence for which consists primarily of the Board's adverse ruling in *Matter of Yerevan.* This Court holds, however, that the rationale provided by the Board demonstrates that its concern was with the public interest and that it had legitimate and substantial reasons for denying a transfer of the license from Yerevan to Vaspourakan. If Vaspourakan disagrees with the decision of the Board, it has a state administrative procedure remedy. The decision of the Board is appealable to the Alcoholic Beverages Control Commission and its decision in turn is appealable to the Massachusetts Superior Court. Mass.Gen.L. ch. 30A, § 14(1).

For the reasons stated above, the decision of the Bankruptcy Court is AFFIRMED.

seeks to be allowed to serve. *See Matter of Yerevan* at 3. Vaspourakan also argues that the Board was wrong to characterize the transfer as creating an additional drinking establishment because two drinking establishments, Casablanca and Cache, would be reduced to one new entity at the site of the latter. However, at the time that the Board made its decision, only one licensed establishment existed (Casablanca) and it was closed, apparently permanently. Thus, the transfer would indeed create an additional drinking establishment open for business. Vaspourakan's other attacks on the reasoning of the Board are similarly unavailing.