**In re Daniel NEJBERGER d/b/a Piccolo's Famous Pizzas and Il Pastaio, Debtor.**

**Daniel NEJBERGER d/b/a Piccolo's Famous Pizzas and Il Pastaio, Plaintiff,**

**v.**

**PENNSYLVANIA LIQUOR CONTROL BOARD, Defendant.**

**Bankruptcy No. 89–13013F.**
**Adv. No. 89–0783F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 13, 1990.

Ernest D. Preate, Jr., Pennsylvania Atty. Gen., Price Altee Thomas, Sr. Deputy Atty. Gen., Philadelphia, Pa., for defendant, Pennsylvania Liquor Control Bd.

Douglas H. Weiss, Astor, Weiss & Newman, Philadelphia, Pa., for debtor, Daniel Nejberger.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM OPINION

### BRUCE I. FOX, Bankruptcy Judge:

Before me is the debtor's complaint against the Pennsylvania Liquor Control Board, which asks me to "Compel and Direct" the Board to renew the debtor's liquor license, utilizing the equitable powers granted by 11 U.S.C. § 105(a).[1] The parties by agreement have submitted a stipulation of facts, which they assert contains all the evidence relevant to my resolution of this dispute. These facts are brief, and may be summarized as follows.

### I.

The debtor in this chapter 11 case is an individual who operates two restaurants in the Philadelphia area. The Liquor Control Board issued the debtor a restaurant liquor license for a term beginning October 31, 1987 and ending October 31, 1988. On, approximately, August 20, 1988, the debtor filed an application to renew this license for another year (that is, from October 31, 1988 through October 31, 1989). *See* 47 P.S. § 4–470. The debtor tendered the requisite filing fees and bond for this renewal.[2]

By letter dated September 2, 1988, the Board informed the debtor that "if the Board does not receive clearance from the Department of Labor and Industry, your renewal application will be rejected." Ex. 3. Indeed, page 2 of Exhibit 3 is a letter to the debtor from that Department, which states that because there was a balance due from the debtor to the Pennsylvania Unemployment Compensation Fund in the amount of $72,808.41, the Department would be unable to provide the Board with a favorable clearance for processing the license renewal application.

Similarly, by letter dated September 8, 1988 the Board informed the debtor that its renewal application would be rejected unless the Board received tax clearance from the Department of Revenue. Ex. 4 at 1. By letters dated August 31, 1988 (Ex. 4 at 2 and 3) the Department of Revenue notified the debtor that because of its "delinquent conditions" its license application could not be processed. The delinquent conditions addressed in these letters included a liability for sales tax in the amount of $352,896.63, the non-filing of certain returns or registrations, Ex. 4 at 2, and a

---

1. The Board initially entered a motion to dismiss the debtor's adversary complaint; that motion effectively has been subsumed by the agreement to have me decide this proceeding upon stipulated facts.

2. The debtor also filed an application, postpetition, for a renewal of its license on or about October 24, 1989, for use in 1989–1990. A copy of this application was attached to the joint stipulation as Exhibit 2.

liability of $1,551.62 for an "annual" tax, Ex. 4 at 3.

The next correspondence of record between the Board and the debtor is dated December 21, 1988 (approximately two months after the "expiration" of the 1987–1988 license). This letter is a "formal notice of objection to the renewal" of the debtor's liquor license for the license period effective November 1, 1988, because of the debtor's failure "to verify that all State tax reports have been filed and all State taxes have been paid, timely appealed or approved for deferred payment as required by Section 477 of the Liquor Code...." Ex. 5.

The last prebankruptcy communication from the Board to the debtor is dated March 8, 1989. This letter states that the application for renewal is "refused" because of the delinquent tax conditions described above, and because of the "non-filed return/registration." Ex. 6. The letter continues, however, to state that "you will be given a reasonable period of time to rectify this matter during which time we will hold the renewal application, bond, fees, etc. in abeyance, but in no event beyond the expiration date of the license term October 31, 1989."

The debtor filed a chapter 11 petition in bankruptcy on August 17, 1989. Subsequently, by letter dated September 15, 1989, the Board informed the debtor that

[o]n March 8, 1989 the application for renewal of Restaurant Liquor License R–15538 was refused for tax deficiency and/or other application deficiency. In view of the fact the 10–month period has now expired we are terminating the application and closing the file.

Ex. 7. The "10–month period" referred to in this letter is understood to refer to the provision of 47 P.S. § 4–470(a) which allows the Board in its discretion to accept a renewal application filed within ten months after the expiration date of the license. Thus, the debtor filed its petition in bankruptcy before the statutory ten month period of abeyance had expired, and also before the end of the Board's stated abeyance period. (See Ex. 6.)

II.

At the outset, the Liquor Control Board asserts that the debtor has no property interest in any liquor license and so contends that this court has no subject matter jurisdiction over this dispute.

 This jurisdictional argument may be dispatched as it confuses the concept of failing to state a cause of action with the concept of jurisdiction. *See In re Monroe Well Service, Inc.*, 67 B.R. 746, 754 (Bankr. E.D.Pa.1986). A federal court always has the jurisdiction to determine whether jurisdiction properly lies. *E.g., United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Ilan–Gat Engineers, Ltd. v. Antiqua Internat'l Bank*, 659 F.2d 234, 239 (D.C.Cir.1981). *Accord,* Bator, Meltzer, Mishkin and Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* at 1704 (3d ed. 1988). Specifically, a bankruptcy court has jurisdiction to determine any dispute which conceivably may affect the administration of the bankruptcy case; this includes disputes affecting the nature of the debtor's estate, and the distribution of such property to creditors or to debtors (if exempt). *See Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984); *In re M. Paolella & Sons, Inc.*, 85 B.R. 965 (Bankr.E.D.Pa. 1988). This court clearly has the power to determine whether the debtor has a property interest in a liquor license under 11 U.S.C. § 541(a), and, if so, whether the defendant is wrongfully violating any bankruptcy code provisions in denying a license to the debtor. *See In re Morris*, 45 B.R. 350 (E.D.Pa.1984). If it is determined that the debtor possesses such an interest, this court then has the power to decide whether such interest should be "turned over" to the estate. *Cf.* 11 U.S.C. §§ 542, 543; *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). If the debtor holds no such property right, the Liquor Control Board correctly states that the debtor should be denied relief, but that decision will not be based upon a finding of lack of jurisdiction. *See Nestor v. Hershey*, 425 F.2d 504 (D.C.Cir.

7

1969). Thus, I must decide whether the debtor has any property interest in the liquor license. *Id.*

■ Similarly confused is the contention by the Liquor Control Board that this court cannot adjudicate the dispute because of sovereign immunity. To the extent such immunity exists, it protects state agencies against certain monetary awards and not from injunctive or declaratory determinations. *See, e.g., Missouri v. Jenkins,* — U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *In re James,* 112 B.R. 687 (Bankr.E.D.Pa.1990); *In re Colon,* 102 B.R. 421, 430 (Bankr.E.D.Pa. 1989). Since the debtor here does not seek monetary relief, only injunctive relief, sovereign immunity is not affected.

## III.

### A.

As an additional preliminary matter, I note that the debtor presents this case as one where the failure of the Liquor Control Board to grant a license renewal is based solely on its nonpayment of prepetition taxes. The Board does not disagree, as it raises arguments involving the extent of the debtor's interest in the license, but does not suggest that the Board had any basis other than the nonpayment of taxes for disallowing the renewal. At the trial I pointed out to the parties that their exhibits made reference to the fact that the license was denied on the additional basis of the debtor's failure to file certain monthly tax reports. Neither party chose to pursue this factor or discuss its impact, if any, on the question before me, by way of posttrial submissions.

The state Liquor Code requires, at 47 P.S. § 4–477(a), that an applicant for license renewal provide to the Board the following:

(1) the applicant's State personal income tax identification number;

(2) the applicant's State sales tax number;

(3) the applicant's State corporation tax number;

(4) the applicant's State employer withholding tax number;

(5) the applicant's unemployment compensation account number; and

(6) a statement that:

(i) all State tax reports have been filed and all State taxes paid;

(ii) all State taxes are subject to a timely administrative or judicial appeal; or

(iii) all State taxes are subject to a duly approved deferred payment plan.

At subpart (d) of this section, the Board is directed to not approve any application for renewal where the applicant has failed to meet any one of the following three criteria:

(1) provide any of the information required by subsection (a);

(2) file required State tax reports; or

(3) pay any State taxes not subject to a timely administrative or judicial appeal or subject to a duly authorized deferred payment plan.

Here, it is acknowledged that the debtor did not pay certain state taxes prepetition, but did provide all of the information required by subsection (a) except for a statement that all tax reports had been filed, § 4–477(a)(6)(i). Thus, it appears that the debtor failed to satisfy the provisions of subsection (d)(1), which apparently subsumes the requirements of (d)(2).

The parties declined to discuss the mandatory state tax reports and their potential effect upon a liquor license application, and my research into the liquor code and related state statutes did not reveal anything which would illuminate the contents of such reports for purposes of resolving the instant controversy.[3] As the parties pressed me to treat this matter as one arising solely from nonpayment of taxes, as the Board does not address in any fashion this potential basis for its decision to

---

**3.** Indeed, upon inquiry it appears that the Liquor Control Board may in fact not deny an application for the grant, renewal or transfer of

any liquor license based solely upon the failure to file required state tax reports. This, however, is not of record before me.

not renew a license, and as there is no other clear statutory reason for compelling the filing of state tax reports, I shall treat this issue as requested by the parties. That is, the failure to file the state tax reports will be treated as the essential equivalent of the nonpayment of taxes. *See In re Aegean Fare, Inc.*, 35 B.R. 923 (Bankr.D.Mass.1983).

## B.

■ I must also address the Board's contention that the debtor has no property interest in the liquor license. It argues that under the applicable state statute, the debtor was possessed of the license for one year, which expired on October 31, 1988. The license was not renewed because of the debtor's failure to pay taxes and upon non-renewal, the Board posits, the license expired. Therefore, it is suggested that the debtor has no property interest in the license which is affected by its bankruptcy case. Upon review, I reject this suggestion and conclude that the debtor's interest in the license at issue is property of the estate.

The liquor code provides, at 47 P.S. § 4–470(a), that the Board may renew a license within a ten month period following its expiration.[4] Here, that ten month period expired on August 31, 1989, after the filing of the petition in bankruptcy. Given this statutory right to renew after the "expiration" of the license, I cannot conclude that the debtor was divested of all interest in the license after its "expiration" on October 31, 1988. *See, e.g., Counties Contracting & Const. Co. v. Constitution Life Insc. Co.*, 855 F.2d 1054, 1057 and n. 3 (3d Cir.1988) ("grace period" of insurance policy was part of the property of the debtor's estate); *In re Hoffman*, 65 B.R. 985 (D.R.I. 1986) (property of estate includes liquor license even where debtor delinquent in tax payments); *In re Hodges*, 33 B.R. 51 (Bankr.E.D.Pa.1983) (property of estate includes liquor license held by Board for "safekeeping"). *See generally In re Gull Air, Inc.*, 890 F.2d 1255 (1st Cir.1989) (debt-

or has a property interest in airport landing slots subject to restrictions found in non-bankruptcy law).

The letters sent to the debtor by the Board do not "terminate" the application for renewal until September 15, 1989. Ex. 7. There was no denial of approval until March 8, 1989, see Ex. 6, when the Board "refused" the debtor's application for renewal, but nonetheless gave the debtor "a reasonable period of time to rectify this matter during which time we will hold the renewal application, bond, fees, etc. in abeyance, but in no event beyond the expiration date of the license term October 31, 1989." Ex. 6 at 2. The inference of this letter, then, was that the license would be renewed if the debtor would tender all sums due to Commonwealth or make satisfactory arrangements to pay within this "reasonable time."

The only basis upon which the Board could have denied the renewal, even with a timely payment by the debtor of back taxes, was if the vacancy in the licensure quota created by the March 8, 1989 abeyance action had been filled by an intervening license applicant. That is, and the debtor concedes, that there is a quota which limits the number of liquor licenses that can be granted in a defined geographic area. 47 P.S. § 4–470(a). While the debtor's license is under application for renewal pending the payment of taxes, or while it is held in abeyance, that license is not counted toward the quota in that area. Another party might apply for a license in that geographic area while the debtor's license is withheld; should that other party be granted a license, and should the quota be met by this grant, then the Board must deny the debtor's renewal even upon the debtor's subsequent payment of taxes. *See Pennsylvania Liquor Control Board v. Wayside Bar, Inc.*, 120 Pa.Cmwlth. 176, 547 A.2d 1309 (1988).

Here, there was no evidence that the license would not have been renewed if the taxes had in fact been paid, or a deferred payment plan authorized, as of the date the

---

4. The Board is not possessed of the ability to renew a license during this ten month period

under certain circumstances, most of which are not applicable here. *See* 47 P.S. § 4–470(a).

debtor filed for bankruptcy, for this or any other reason. Property of the estate is generally measured as of the date the bankruptcy petition was filed. *In re Stephen Smith Home for the Aged, Inc.,* 80 B.R. 678, 682 (E.D.Pa.1987). Given that the burden should sit with the Board to prove this defense, but that no evidence was produced, I conclude that the license would have been renewed upon payment of taxes on August 17, 1989.[5] Thus, the Board cannot be correct in its argument that the debtor had no property interest in the liquor license as of the date this bankruptcy case commenced. *See Counties Contracting & Construction Co. v. Constitution Life Insc. Co.*

The Board's reliance on *Pennsylvania Liquor Control Board v. Liederkrantz,* 450 Pa. 423, 300 A.2d 87 (1973) does not convince me of the correctness of its position. That decision is cited by the Board to support the proposition that a one year liquor license expires at the end of that twelve month period, after which the license no longer exists and the debtor is possessed of no interest. However, *Liederkrantz* was concerned with the bonds which must be posted with each successive liquor license; the appellant in that case was arguing that its license was actually a continuing license, which was renewed annually. The court, interpreting section 434 of the Liquor Code, rejected this, reasoning that the Code did not create a continuing license, but created a one year license for which separate bonds are required. The court in *Liederkrantz* was not concerned with the residual interest remaining in the licensee after the twelve month license period.[6]

## C.

The Board does not argue that 11 U.S.C. § 108(b) is relevant to this dispute. This subsection provides in pertinent part that:

if applicable nonbankruptcy law ... fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case;

(2) 60 days after the order for relief.

The debtor[7] has assumed that if it prevails in demonstrating that it possessed a property interest in the nonrenewed liquor license as of the date it commenced its bankruptcy case, and if nonrenewal was caused solely by the existence of a prepetition tax obligation, then it will have the ability to repay this obligation over the life of a confirmed chapter 11 plan, *see* 11 U.S.C. § 1123(a)(5)(G), or at least over a six year period. 11 U.S.C. § 1129(a)(9)(C). In other words, the debtor has assumed the inapplicability of section 108(b). If that subsection were relevant, and if the debtor's ability to cure its default were limited by Pennsylvania law or the agreement of the parties, then it would have only 60 days from the filing of its petition, or the deadline set by non-bankruptcy law or the parties' agreement, whichever is longer, to cure its tax delinquency. *See generally Counties Contracting & Construction Co. v. Constitution Life Insc. Co.*

---

5. Also, 11 U.S.C. § 525(a) speaks of the renewal of licenses; should the Board be correct in its assertion (that because the license expired prebankruptcy there is no property of the estate subject to administration or jurisdiction) then this protection of § 525(a) might be rendered meaningless.

6. *Compare Replogle v. Pennsylvania Liquor Control Board,* 514 Pa. 209, 523 A.2d 327 (1987) (appellant had no property right in the renewal of a liquor license, where municipality had vot-

ed, pursuant to 47 P.S. § 4-472, to prohibit the sale of alcoholic beverages within its borders; this section held not to violate state or federal constitutional concerns and to not constitute an unlawful taking without just compensation).

7. Section 1107(a) grants to a debtor in possession almost all the powers of a trustee, including those under § 108(b). *See In re Flying "S" Land & Cattle Co.,* 71 B.R. 183 (Bankr.D.Nev. 1987).

Some courts have perceived a tension between section 108(b) and code provisions such as section 362(a) and 1123(a)(5)(G) and have tended to restrict section 108(b) to narrow settings. *E.g., In re Jenkins,* 19 B.R. 105 (Bankr.D.Colo.1982); *In re Johnson,* 8 B.R. 371 (Bankr.D.Minn.1981). In this circuit, however, the Court of Appeals has instructed that to the extent non-bankruptcy law or the agreement of the parties establishes a redemption period, section 362(a) does not serve to enlarge that redemption period and permit payment over the life of the plan. *Counties Contracting & Construction Co. v. Constitution Life Insc. Co.,* 855 F.2d at 1059; *In re Roach,* 824 F.2d 1370, 1372 n. 1 (3d Cir.1987). *See also Johnson v. First National Bank,* 719 F.2d 270, 278 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

■ It may be correct that the ability of this debtor to obtain the renewal of its liquor license beyond the expiration period is equivalent to a redemption right. It is not correct, however, that Pennsylvania law establishes a fixed period for the debtor's tender to the Commonwealth of all delinquent taxes in order to obtain such renewal. While 47 P.S. § 4–470(a) allows the Board the discretion to grant renewal within 10 months of the expiration date of the license,[8] 47 P.S. § 4–477(a)(6)(i) permits renewal upon a statement that all outstanding state taxes have been paid, "or, (iii) all State taxes are subject to a duly approved deferred payment plan."

Thus, non-bankruptcy law did not restrict the debtor's interest in its liquor license to a ten month cure period during which all unpaid taxes must be tendered. The debtor was also given the option of proposing a deferred payment plan, the terms of which were not statutorily defined. In essence, then, the debtor's chapter 11 filing during the ten month redemption period represents the proposal for such deferred repayment. Indeed, 11 U.S.C. § 1129(a)(9)(C) may well specify with some precision the repayment obligation of the debtor to the Commonwealth for unpaid prepetition taxes—repayment within six years at present value.

I therefore conclude that § 108(b) does not restrict this debtor's ability to recover now its liquor license or limit its property right in that license. As the Commonwealth was silent on this point, it apparently reached the same conclusion.

### IV.

The debtor essentially argues that I should direct the renewal of its liquor license because the Board's actions in denying that renewal run afoul of either 11 U.S.C. § 362(a) or § 525(a). These provisions of the bankruptcy code provide similar relief, although in quite different contexts.

I noted recently, in *In re Saunders,* 105 B.R. 781, 787 (Bankr.E.D.Pa.1989), that a governmental creditor's discriminatory postpetition action designed to coerce or obtain repayment of its prepetition claim is addressed by the broad provisions of § 362(a). *See also In re Colon,* 102 B.R. 421 (Bankr.E.D.Pa.1989). On the other hand, § 525(a), a congressional codification of the Supreme Court decision of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), *see generally In re Rees,* 61 B.R. 114 (Bankr.D.Utah 1986), "was intended to reach non-creditor governmental (or quasi-governmental) entities that, in their quest to protect the public interest, wrongfully discriminate against debtors and frustrate the 'fresh start' policy of the bankruptcy code by denying property interests not obtainable through the private sector." *In re Saunders,* 105 B.R. at 787. Thus, unless the governmental entity was a creditor, or was acting as an agent for a creditor, *see In re Colon,* 102 B.R. at 429 n. 12, this form of discrimination would not violate § 362, but instead is addressed by § 525(a). *In re Saunders. See Matter of M. Frenville Co.,* 744 F.2d 332, 335 (3d Cir.1984), *cert. denied,* 469

---

**8.** Whether this ten month period is immutable is unclear given the Board's letter to the debtor of March 8, 1989, Ex. 6, which established the redemption period at 12 months from the expiration date.

U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (automatic stay does not apply to entity that holds no prepetition claim). Initially, then, the issue is whether the Liquor Control Board, an agency of the Commonwealth of Pennsylvania, was a prepetition creditor (or agent for a creditor), for this determination will dictate which of the statutory provisions govern this dispute.

I conclude without much difficulty that the Board is not a creditor of this debtor. The Board does not assert that it is owed any sums of money,[9] and it has not been shown that the Board has filed a proof of claim. Instead, two other state agencies assertedly are owed sums of money in satisfaction of delinquent taxes owed to them. Exhibit 3, page 2 is a letter to the debtor on stationery of the Commonwealth's Department of Labor and Industry, Office of Employment Security. This letter states that, because of an outstanding balance due to the Pennsylvania Unemployment Compensation Fund, the Department "is unable to provide the [Liquor Control Board] with a favorable clearance for processing your license application...." Similarly, Exhibit 4 at pages 2 and 3 are letters written to the debtor on stationery of the Commonwealth's Department of Revenue, stating the amounts of the debtor's delinquent taxes owed to that Department, and further stating that the license application cannot be processed until "all delinquent conditions ... are resolved.... Your failure to comply will result in the denial of your application" for renewal.[10] Conversely, the "cover letters" to the debtor that precede each of the letters describing outstanding taxes owed are sent from the Board, and

do not refer to monies owed to it.[11] The Board, standing alone, cannot be said to be a creditor of this debtor.

■ The Board may be said to be acting in the capacity of agent for these other governmental entities, however, in which case it would be subject to the provisions of § 362(a). In this respect, the Board's actions are similar to actions taken by another state agency, PennDOT, in the case *In re Colon*, 102 B.R. at 429 n. 12. There, PennDOT sent letters designed to collect prepetition claims, but the Philadelphia Traffic Court was listed by the debtors as the creditor, and by statute the Traffic Court was the entity to which traffic violations fines were actually paid. I determined in that case that PennDOT was at least a noncreditor agent, if not an actual creditor. It appears that 47 P.S. § 4–477 puts the Liquor Control Board in a statutory collection agent position analogous to that occupied by PennDOT in *In re Colon.* That entity, then, must be subject to the concerns of the automatic stay. *See, e.g., In re Wilson*, 19 B.R. 45 (Bankr.E.D.Pa. 1982) (actions of sheriff in executing on real property for judgment creditor violated automatic stay).

Section 362(a)(1) directs that the filing of a petition in bankruptcy operates as a stay against all judicial and other proceedings against the debtor which were, or could have been, commenced before the bankruptcy. The stay prohibits actions to recover a claim against the debtor that arose before the commencement of the bankruptcy case. 11 U.S.C. § 362(a)(1), (6).[12] Thus,

**9.** As noted above, all fees were paid and the required bond posted in connection with the debtor's request for renewal.

**10.** As the debtor's schedules were not moved in evidence, I cannot determine which, if any, of these three governmental agencies may have been listed by the debtor as creditors. *See In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir.1942).

**11.** I do not conclude that there is but one creditor involved in this situation. That is, I do not find that the debtor's liability extends generally to the Commonwealth of Pennsylvania, as a single creditor. *Cf. WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996 (1st Cir. 1988) (taxes owed to state department of reve-

nue did not arise out of the "same transaction or occurrence" from which the debtor's claims against the department of public welfare arose, 11 U.S.C. § 106(a)). *But see In re A.J. Bayless Markets, Inc.*, 108 B.R. 721 (Bankr.D.Ariz.1989) (where municipality is owed taxes, it "cannot seriously be argued that the State is not benefitted when its political subdivision receives payment of its taxes.").

**12.** *Compare* House Rept. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297, ("all proceedings are stayed, including ... license revocation ... proceedings") *with* Senate Rept. No. 95–989, 95th Cong., 2d Sess. 50 (1978), U.S.Code Cong. &

it is clear that the Board's refusal to renew the liquor license within the statutory renewal period solely because of the debtor's failure to pay a prepetition tax debt falls within the scope of activities prohibited by the automatic stay. *In re Hoffman*, 65 B.R. 985, 987 (D.R.I.1986); *In re Colon*, 102 B.R. at 429; *In re Blarney, Inc.*, 53 B.R. 162, 164–65 (Bankr.D.Minn.1985); *In re Aegean Fare, Inc.*, 35 B.R. at 927. *Accord Matter of Elsinore Shore Associates*, 66 B.R. 708, 715 (Bankr.D.N.J.1986).

Phrased slightly differently, upon the debtor's filing bankruptcy on August 17, 1989, the Board had a duty to view this bankruptcy filing as tantamount to the tender of an acceptable deferred repayment proposal for the outstanding prepetition tax liability. *See Henry v. Heyison*, 4 B.R. 437 (E.D.Pa.1980). If such tender would qualify the debtor for license renewal, then the denial of such renewal is improper under bankruptcy law.

The Board's position must be, however, that the renewal of a liquor license is a regulating function of the state that is exempt from the operation of the automatic stay by virtue of 11 U.S.C. § 362(b)(4). *In re Colon*. This section provides that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." Therefore, whether the actions of the Board that sought payment of prepetition delinquent taxes are stayed by section 362(a)(1) depend upon whether the action taken by the Board was to enforce the state's police or regulatory power.[13]

■ As stated by one court, "not every maneuver by every arm of every sovereign qualifies for the balm of § 362(b)(4)." *In re Hoffman*, 65 B.R. at 988. In order to qualify for this exception, the purpose of the state's actions must be the conserva-

tion of public health, safety, or welfare. *E.g., United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir.1988); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383 (3d Cir. 1987); *Missouri v. U.S. Bankruptcy Court for Eastern Dist.*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). The exemption will not lie if the purpose of the state law upon which the state agency has acted is to protect the state's pecuniary interest in property. *In re Hoffman*, 65 B.R. at 988. *See In re Blarney, Inc.*, 53 B.R. at 165; *In re Aegean Fare, Inc.*, 35 B.R. at 927 ("courts have made a distinction between governmental actions which are aimed at obtaining a pecuniary advantage for ... its citizens, and those actions which represent a direct application of the unit's police or regulatory powers. The former are stayed under 11 U.S.C. § 362(a)(1); the latter are not.").

■ In the matter *sub judice*, I find that the purpose and effect of the state law (which requires a licensee-debtor to either pay its prepetition state taxes or arrange for such payment before obtaining license renewal) is to protect the state's public fisc, and not to address welfare, health, or safety concerns. First, the statutory provisions at issue do not articulate any concern for the citizenries' safety, health, or welfare. Instead, the language of 47 P.S. § 4–477 addresses the payment of state taxes prior to the renewal of a liquor license. This requirement is in the nature of revenue collection, as it is a method of collecting delinquent taxes, seeking as it does the obtainment of a pecuniary advantage by doing indirectly that which the Commonwealth is prohibited from doing directly. *In re Aegean Fare, Inc.*, 35 B.R. at 928. "As such, the law snugly fits the description of 'pecuniary' legislation of the sort that will not be excepted from the

Admin.News 1978, p. 5836, (Senate report does not mention license revocation proceedings).

**13.** The legislative history underpinning § 362(b)(4) states that this subsection will hold a governmental proceeding as nonviolative of the automatic stay when the action is taken "to prevent or stop violation of fraud, environmen-

tal protection, consumer protection, safety, or similar police or regulatory laws...." House Rept. No. 595, 95th Cong., 1st Sess. 342–43 (1977); Senate Rept. No. 989, 95th Cong., 2d Sess. 51–52 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5837–5838, 6298–6300.

automatic stay." *In re Hoffman,* 65 B.R. at 989. *See In re Terwilliger's Catering Plus, Inc.,* 86 B.R. 937, 940 (Bankr.S.D. Ohio 1988); *In re William Tell II, Inc.,* 38 B.R. 327, 330 (N.D.Ill.1983); *In re Blarney, Inc.,* 53 B.R. at 165; *In re Aegean Fare, Inc.,* 35 B.R. at 928. *Accord In re Kick-Off, Inc.,* 82 B.R. 648, 650 (Bankr.D. Mass.1987); *In re Gencarelli,* 14 B.R. 751, 753 (Bankr.D.R.I.1981).

Indeed, the parties are in apparent agreement that the sole failure for the renewal was nonpayment of taxes. There is no suggestion, for example, that the debtor failed to maintain its restaurants in a sanitary condition, that the debtor had been found to sell liquor illegally to minors, or that any other cause existed for the Board to not renew the debtor's license. *Compare, e.g., Vaspourakan, Ltd. v. Licensing Board for Boston,* 85 B.R. 189, 191 (D.Mass.1988) (licensing board legitimately denied transfer of liquor license to debtor as board's actions were exercise of its police power, where, *inter alia,* the debtor's principal had wrongfully allowed afterhour services, had permitted a conscious pattern of racial discrimination in admitting patrons, and had permitted the use of cocaine on premises under his control). The bankruptcy stay does not divest the Board of its ability to deny renewal due to a "violation by the licensee ... of the laws of the Commonwealth or regulations of the board relating to the ... use, storage, importation, possession or sale of liquors, ... or the conduct of a licensed establishment," or due to the fact that "the applicant has by his own act become a person of ill repute," or that "the premises do not meet the re-

quirements of this act or the regulations of the board...." 47 P.S. § 4-470(a). Such statutory language does address the concerns of regulatory and police power; however, it is not relevant to the instant controversy.

Second, I note that neither the Department of Revenue nor the Department of Labor and Industry, the two state agencies that are owed prepetition taxes, have any mechanism by which they can otherwise regulate or control the debtor/liquor licensee. Their statutory schema is silent as to their regulation of liquor licenses. I therefore agree that the mere power of the Liquor Control Board to block a renewal until delinquent taxes are paid cannot be equated to an exercise of police or regulatory power, where there exists no other type of control over the licensee. *In re Hoffman,* 65 B.R. at 989. Accordingly, I find that the Board's actions are violative of the stay under § 362(a)(1).[14]

The state taxes are prepetition claims which the debtor will have to address in the context of this chapter 11 case. By virtue of 11 U.S.C. § 507(a)(7) these tax liabilities may be priority claims. If so, 11 U.S.C. § 1129(a)(9)(C) would require the debtor to repay the obligation in full, with interest, over not more than a six year period. Therefore, while the bankruptcy code may obligate the Commonwealth to provide the debtor the license renewal it seeks, and thus weaken its collection power, the code also protects and elevates the claims of the taxing authorities to a certain degree. This statutory balance of interests should be preserved.

An appropriate order shall issue.

**14.** As I have concluded that the Board's actions do not fall within the exception to the automatic stay provisions provided by 11 U.S.C. § 362(b)(4), I need not address whether, as the debtor argues, it would be appropriate to otherwise order the renewal of the debtor's license pursuant to 11 U.S.C. § 105(a). *See Penn Terra, Ltd. v. Department of Environmental Resources,* 733 F.2d 267, 273 (3d Cir.1984); *In re Aegean Fare, Inc.,* 35 B.R. at 928 n. 3; *In re Mason,* 18 B.R. 817, 821 (Bankr.W.D.Tenn.1982). *But see In re Morristown & Erie Railroad Co.,* 885 F.2d 98, 100 (3d Cir.1989); *Southern Ry Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir.1985). Further, I need not address the question of whether the renewal should be ordered under

the provisions of 11 U.S.C. § 525(a), the express language of which may also address the Board's actions. *Watts v. Pennsylvania Housing Fin. Co.,* 876 F.2d 1090, 1093 (3d Cir.1989); *In re Norton,* 867 F.2d 313, 316–17 (6th Cir.1989); *In re Saunders,* 105 B.R. at 788 n. 14. *But see Matter of Elsinore Shore Associates,* 66 B.R. at 723; *In re William Tell II, Inc.,* 38 B.R. at 331 (debtor's postpetition application for renewal denied for failure to pay certain taxes, which were dischargeable debts, held to violate § 525 (see footnote 5 *infra* )); *Matter of Anderson,* 15 B.R. 399, 400–01 (Bankr.S.D.Miss.1981) (liquor license ordered renewed because failure to renew would violate § 525, where debtor failed to pay state taxes).

## ORDER

AND NOW, this 13th day of April, 1990, upon consideration and for the reasons set forth in the accompanying Memorandum Opinion, the Pennsylvania Liquor Control Board's denial of the debtor's application to renew a liquor license is violative of the automatic stay, 11 U.S.C. § 362(a), and the Board is directed to renew the liquor license for the period November 1, 1989 through October 31, 1990.